(43 App. Div. 33.)

### JONES v. FOSTER et al.

(Supreme Court, Appellate Division, Fourth Department.   July 18, 1899.)

1. **FALSE IMPRISONMENT—PLEA OF GUILTY.**

   A person who, on arraignment, pleads not guilty, but subsequently, on an adjournment of the trial, to avoid incarceration in default of bail, changes his plea to guilty, and pays the fine imposed, and the license fee for the nonpayment of which he was arrested, cannot maintain an action for false imprisonment against the person causing his arrest.

2. **MUNICIPAL CORPORATIONS—POLICE POWER.**

   Laws 1896, c. 812, § 13, authorizes the trustees of the village of Sylvan Beach to enact such regulations as they may deem necessary within the act, and to prescribe a penalty for the violation thereof. Laws 1897, c. 414, § 90, subd. 1, gives trustees of a village authority to prohibit by ordinance peddling without a license, except the peddling of meat, fish, fruit, and farm produce. *Held*, that the trustees of Sylvan Beach were authorized to prohibit hawking, and provide a penalty for so doing without a license.

3. **ORDINANCE—POLICE REGULATION—REASONABLENESS.**

   An ordinance prohibiting the crying out of the sale of lemonade, candy, cigars, and canes by a device of a throw at a dummy, without a license, is not unreasonable, or against public policy.

4. **FALSE IMPRISONMENT—DEFECT IN WARRANT—WAIVER.**

   In an action for false imprisonment, where it appears that the magistrate had jurisdiction both of the offense and the person of the plaintiff in the proceeding in which he was imprisoned, any irregularity in the warrant was waived by a voluntary appearance and plea.

Appeal from trial term, Oneida county.

Action for false imprisonment, brought by John H. Jones against William H. Foster and others. From a judgment in favor of plaintiff, defendants appealed. Reversed.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, SPRING, and NASH, JJ.

Thomas Jones, for appellants.

D. F. Searle, for respondent.

SPRING, J. Sylvan Beach is a village incorporated under a special act, and the various acts pertaining to it were revised and consolidated by chapter 812 of the Laws of 1896. On the 20th of July, 1896, the board of trustees of the village duly enacted certain regulations for the government of the village. Regulation 10 is as follows:

"No person or firm shall conduct any show or exhibition of any kind, hawk or peddle any goods, wares, or merchandise within said area or territory from any stand, basket, or wagon without first having obtained a license therefor from the president of the said board of trustees, who is hereby authorized to fix such fee therefor as may be reasonable, and at the time during which such license shall be operative. The penalty for violation of this regulation shall be a fine of twenty-five ($25) dollars for each and every offense."

These regulations were duly promulgated, and were in operation at the time of the arrest of the respondent. A schedule of license fees had been prepared in conformity to the regulation quoted, and was in force in the year 1897. During the month of August of that year the respondent was carrying on in said village three stands

fronting on avenues or a park, and each close to the sidewalk. On these stands were sold sausages, lemonade, and hot candy; and in one was a doll rack for throwing balls, whereby each person who made a throw paid five cents, and, whether successful or not, received a cigar or a cane. Sylvan Beach was a summer resort for picnickers; and at times large crowds gathered there; and on such occasions respondent cried his wares on the sidewalk and about his sale stands. He was not a resident of the village, but had been in the habit of carrying on this business there for several years. Prior to the consolidation act of 1896, a like regulation had been in force in the village, prohibiting the hawking and peddling of goods without a license; and during a part of the time the respondent had complied with this village law, and paid his license fees, but had omitted to pay those for the year 1896. In 1897 he had promised to take out a license, but upon the 11th of August, when the clerk of the village requested payment of him, he refused to pay. On the succeeding day, the defendant Foster, who was chief of police of the village, heard him crying his goods in front of his stands, reported that fact to the village officers, and upon the deposition of the policeman a warrant was issued, commanding the arrest of the respondent for violating this ordinance of the village against peddling and hawking his goods from his stands without a license permitting it. The respondent was arrested, appeared in charge of the policeman, and pleaded not guilty to the warrant. An adjournment to the succeeding day was agreed upon, to enable him to procure counsel, and his bail was fixed by the police justice at $300. Opportunity was given him to secure sureties upon his bail bond, but, after considerable effort, he failed to get them. The justice thereupon adjourned the proceeding until the next day, informing respondent he would "have to be shut up until morning unless you can get a bond." Thereupon the respondent requested that the case be opened so he could change his plea. This was complied with, and he pleaded guilty to the charge. A fine of $25, which was the sum fixed by the ordinance, was imposed, which he promptly paid, and a day or two later paid the $11 license fees. The respondent gave a somewhat different version of the transaction, for the purpose of upholding the imputation that he was coerced to enter the plea of guilty; but the preponderance of evidence is too overwhelmingly against him to warrant his statement being taken as an accurate recital of what occurred. The plea of guilty, with the payment of the fine imposed, and the subsequent payment of the fees fixed for the privilege of hawking his wares in the village, effectually bars this action of false imprisonment. Cuniff v. Beecher, 84 Hun, 137, 32 N. Y. Supp. 1067; Robbins v. Robbins, 133 N. Y. 597, 30 N. E. 977; Oppenheimer v. Railway Co. (Sup.) 18 N. Y. Supp. 411. This action is similar to the cognate one of malicious prosecution, and, if the defendant has been adjudged guilty of the crime, he cannot maintain a civil remedy against those instrumental in securing his conviction, as long as the judgment stands unreversed. The theory on which each of these actions is sustainable is that the proceeding out of which the action arose has terminated successfully to the defendant, exonerat-

ing him from the charge made. It would be inconsistent to have a judgment of a court of competent jurisdiction proving .guilt, and a verdict by a jury in a civil action, based upon the assumption of innocence. Had respondent been tried and convicted, the judgment would not be of greater verity than that entered upon a confession of guilt of the crime alleged in the warrant. He was not falsely imprisoned, but the judgment of conviction established that his arrest and detention were justifiable. It is urged the respondent was coerced, or induced by fraud, to plead guilty. The evidence fails to support this charge. While he may have changed his plea to guilty in preference to a night's imprisonment, yet he acted freely and voluntarily in so doing.

It is contended the village trustees had no authority to pass the ordinance against hawking, as specific authority was not given in the. statute. By section 13 of chapter 812 of the Laws of 1896 they were empowered "to enact such regulations from time to time as they may deem necessary and proper within the limits of this act, and to enforce the same, and all the provisions of this act." And by the same section they. possessed authority "to designate the penalty for the violation of each regulation, which shall · not exceed twenty-five dollars for each violation or offense." The same sec- tion further makes a violation of the act .a misdemeanor, punishable by fine, not exceeding the penalty in any case imposed by the trustees for the violation of the regulations, and also by imprisonment; and the police court of the village is vested with jurisdiction in the first instance "to hear and determine charges of such misdemeanors." Plenary power is therefore given the trustees to pass any regulations which, within their judgment, are essential; and that judgment will be final, unless there is an unwarranted exercise of it, or the regulation contravenes public policy, or is unjust or unreasonable. Ordinances against hawking and peddling in villages have long been in operation, and, while restricted somewhat, a village law against crying out lemonade, hot candy, and the sale of cigars and canes by the device of a throw at a dummy, without a license, was not reprehensible in any way; and the fee for the privilege in this case is certainly not exorbitant. A municipality always possesses whatever powers are necessary and essential to the carrying out of its legitimate functions, even though not expressed in its charter. Village of Carthage v. Frederick, 122 N. Y. 268, 25 N. E. 480. Chapter 465 of the Laws of 1883 is a general act, vesting the trustees of any village incorporated under a special act with "power and authority to restrain, regulate, or prevent hawking and peddling in the streets." Of like effect is chapter 308 of the Laws of 1884. The general village law (subdivision 1, § 90, c. 414, Laws 1897), which was in force .at the time of the arrest of the respondent, gives to the board of trustees of a village authority by ordinance to prohibit, without a license, hawking and peddling, "except the peddling of meat, fish, fruit, and farm produce"; and by section 340 this act includes any village incorporated under a special charter. The trustees therefore possessed ample authority to designate a fee for the privilege of hawking and peddling, and to pro-

hibit any person from engaging in those pursuits unless he paid the license fee. . While the plaintiff could sell meat within the village limits without a license, it is not so clear that he possessed the right to go up and down the sidewalks of the village crying out his sausages; but it is not necessary to pass upon that question, for he clearly violated the village ordinance in other particulars.

Again, the point is strenuously pressed by the respondent's counsel that the information of the defendant Foster states no crime, that it does not specify any facts, and that it is in the alternative. No objection was presented before the justice against either the warrant or the affidavit of Foster. Jones knew precisely with what he was charged. He pleaded to the warrant, and paid the fine imposed, with a clear apprehension of what was intended in both the affidavit and the warrant. The crime charged was violating the ordinance against selling goods by outcry in the village, without a license. That offense was a misdemeanor, and within the jurisdiction of the police justice. Inasmuch as that officer possessed jurisdiction both of the crime and of the person of respondent, any defect or irregularity in the warrant or preliminary deposition was waived by the voluntary appearance and plea of the defendant in the proceeding. People v. Carter, 88 Hun, 304, 34 N. Y. Supp. 764; Pierson v. People, 79 N. Y. 424–429; People v. Cignarale, 110 N. Y. 23–32, 17 N. E. 135. As was stated by Judge Cowen in People v. Rathbun, 21 Wend. 509, at page 542: "He may waive any matter of form or substance, excepting only what may relate to the jurisdiction of the court." While the affidavit is somewhat informal, yet in the court of a police justice of a small village we cannot expect the careful detail of statement required in an indictment. The affidavit is sufficiently succinct to apprise the defendant named of the misdemeanor laid at his door, and he had no difficulty in mastering its import.

Under the circumstances of this case, even if the police justice erred in his judgment as to the sufficiency of the deposition, the prosecutor will be protected from civil liability. Swart v. Rickard, 148 N. Y. 264, 42 N. E. 665. Most assuredly the justice, acting in good faith, cannot be mulcted in damages. Austin v. Vrooman, 128 N. Y. 229, 28 N. E. 477. The defendants in this action are the president, trustees, police justice, clerk, and two policemen of the village. There is nothing in the case implicating these officials in any desire to harass or punish the respondent. They were engaged, apparently, in an honest attempt to enforce an ordinance of the village. With that duty they were charged. The president and trustees were serving without compensation, and yet, without any malice on their part, they are suffering under a verdict at the instance of a confessed violator of the village ordinance. The verdict does not merely represent the compensatory damages which the plaintiff sustained, if any, but includes a liberal toll as smart money. The verdict is unjust, and is not supported by the evidence. Men in official positions, fairly endeavoring to discharge their duties, should not be lightly put to the penalty of paying damages in upholding the laws of the state. It is a sad commentary on the conduct of

fearless public officers when they are amerced in damages to vindicate a man who has openly confessed his crime by a plea of guilty. As was said by the court in Cuniff v. Beecher, 84 Hun, 137, 32 N. Y. Supp. 1067 (at page 140, 84 Hun, and page 1069, 32 N. Y. Supp.):

"The spectacle of a convicted defendant in a criminal case securing damages in a civil action because of his arrest upon the charge for which he had been criminally convicted would destroy all respect for the law, and would paralyze those provisions of our statutes authorizing private persons to arrest for crime, and authorizing peace officers to arrest without a warrant."

The judgment and order are reversed, and a new trial granted, with costs to the appellants to abide the event. All concur.