# THE CARBONDALE INVESTMENT CO. v. I. D. BURDICK et al.

### No. 13,210. ( 72 Pac. 781.)

#### SYLLABUS BY THE COURT.

1. PRACTICE, DISTRICT COURT—*Law and Equity*—*Rules Applicable.* Notwithstanding that provision of the civil code which abolishes all distinctions between actions at law and suits in equity and the common-law forms of actions and suits, still the rules of law which govern and control the manner of enforcing a cause of action must of necessity depend upon the nature of the cause of action sought to be enforced, and, until the nature of the cause of action, if any, arising out of a given state of facts pleaded is determined, the rules of law governing the case are impossible of ascertainment and application.

2. MALICIOUS PROSECUTION—*Civil Action*—*Pleading and Proof.* To support a judgment for the malicious prosecution of a civil action, it must be alleged and proved that such action was prosecuted without probable cause, with malice, its termination in favor of defendant, and damages to defendant over and above the taxable costs in the case.

Error from Lyon district court; DENNIS MADDEN, judge. Opinion filed June 6, 1903. Reversed.

*Buck & Spencer*, and *Waggener, Doster & Orr*, for plaintiff in error.

*Ed. S. Waterbury*, for defendants in error.

The opinion of the court was delivered by

POLLOCK, J.: It is difficult to determine the exact nature and scope of this action. It was brought by I. D. Burdick and H. W. Burdick against the Carbondale Investment Company, based upon the following facts: The investment company was the owner of an eighty-acre tract of land near the city of Carbondale, upon which there were discovered mineral springs. The investment company desiring to sell this land,

and plaintiffs wishing to purchase for the purpose of utilizing these springs, developing the property, and platting it into an addition to the city of Carbondale, but being without means to pay for the same, the property was conveyed to plaintiffs by the investment company for the consideration of $4672, and a mortgage to secure the entire purchase-price was taken on the property, under an agreement conditioned, among other things, that plaintiffs would plat the property into lots, blocks, streets, alleys, driveways, etc., plant shade and ornamental trees, beautify the grounds, advertise the property for sale, refrain from fencing the land or converting it into a farm, and that the investment company would release the mortgage as to any lot or lots sold, upon payment of the sum of twelve dollars per lot, containing 3750 square feet.

It was alleged in the petition that plaintiffs took possession of the property, caused a plat of the ground to be prepared and filed at a cost of $200, planted shade-trees, ornamented and improved the grounds at a further expense of $1500, and that they expended the further sum of $500 in time and money in advertising the property for sale, sold a large number of lots to divers persons, tendered the investment company the sum of twelve dollars per lot, and demanded a release of such lots from the lien of the mortgage, which demand was refused by the defendant; that defendant wholly failed and refused to comply with its contract to release the lots when sold. It was further alleged :

"That the defendant then wrongfully undertook, contrived and designed wantonly, maliciously and wrongfully to stop all sale of lots whatever by plaintiffs and prevent them from realizing any sum therefrom to pay said mortgage, and to annoy, obstruct and prevent plaintiffs from performing and carrying out said

contract on their part, and to deprive plaintiffs of the benefit of their bargain, and in pursuance of said wrongful purpose refused the releases, instituted the vexatious and unwarranted suits, and did the wrongful acts hereinafter alleged, that is to say : At the time of each such request to release the lots so sold by these plaintiffs (due demand therefor being then made by the plaintiff upon defendant) said defendant, in direct violation of its agreement, and when these plaintiffs were in no default, refused to release a single lot, and would not do so upon proper, timely and sufficient tender, and the defendant from that time continuously has refused to release said lots ; and the defendant having accepted and received the first year's interest on the note and mortgage, which was paid three days after the time it became due, the defendant and its officers having consented that there might be such delay, at a meeting of its board of directors received and accepted such payment and by resolution divided such payment into dividends for its stockholders, and then at the same meeting directed and authorized suit to be brought against these plaintiffs for the foreclosure f said mortgage, and immediately thereafter, about April 18, 1890, in pursuance of said direction, a suit for the foreclosure of said mortgage was instituted against these plaintiffs on the ground of non-payment of said interest and taxes (the defendant then well knowing that plaintiffs had previously paid such taxes), and said suit was continued in court until August, 1891, and the defendant was finally defeated in that suit for the aforesaid reasons.''

It was also alleged that defendant instituted an injunction suit against plaintiffs to restrain them from pasturing the property, which suit finally terminated in favor of plaintiffs, all of which damaged them in the sum of $20,000. To this petition defendant interposed by way of answer a general denial. The case was tried to the court and a jury, resulting in a general verdict for $10,500, together with interest

amounting to $17,747.10. Answers to special questions were returned as follows:

(Requested by plaintiffs.)

"1. Did the defendant wrongfully commence and prosecute an action to foreclose its mortgage on the property, which is the subject of this controversy, before it was due? Ans. Yes.

"2. Did said suit prevent the plaintiffs from making sales of lots? A. Yes.

"3. Did the defendant wrongfully refuse to release its mortgage on lots which these plaintiffs had sold? A. Yes.

"4. Did such refusal prevent the plaintiffs from making sales of lots? A. Yes.

"5. Did the wrongful bringing of the first two suits and the refusal to execute releases of its mortgage deprive the plaintiffs of all opportunity to consummate sales and wholly prevent them from selling lots prior to the maturity of the note and mortgage? A. Yes.

"6. What was the market value of the lots as a whole immediately prior to the commencement of the first foreclosure suit, on April 18, 1890? A. $14,000.

"7. After the bringing of such suits, and after the refusal of the defendant to execute said releases, had the property in controversy a market value as lots, or only as farming lands? A. As lots.

"8. What was such market value? A. $3500."

(Requested by defendant.)

"1. Is it not a fact that the only money directly paid out in the purchase of trees by the plaintiff in 1889 was $30 for catalpas? If they paid any more, state how much. A. No—mulberry; amount not specified.

"2. How much damage, if any, do you allow plaintiffs for the failure of defendant to release lots for Bailey and Barnes? State separately as to each. A. Do not know, as the refusal of defendant to release lots was one of the causes of depreciation in value of the property.

"3. How much damage, if any, do you allow for failure to release the mortgage as to one lot to Overmeyer, one lot to Gregory, and four lots to Gathercole? State separately as to each. A. Do not know, as the refusal of the defendant to release lots was one of the causes of the depreciation in value of the property.

"4. Did the plaintiffs ever tender to the defendant, when demanding releases, either the fee to the officers, or furnish an officer to take the acknowledgment of such releases? A. Evidence does not show that they did.

"5. Is it not a fact that the proposed release of lots claimed to have been sold to one Jordon was never presented to the defendant until March 15, 1891? If presented before, when, by whom, and to what officer of the company? A. No; a few days before, to McKee and Stolzman, by Jordon and H. W. Burdick.

"6. Is it not a fact that the only tenders ever made before the maturity of the note in question was for one lot to Overmeyer and one lot to Gregory, after August 1, 1890, and four for Gathercole, just a few days before the maturity of the note? If there were any others, state for whom and when made. A. No; for Jordon and Huntoon, prior to the maturity of the note.

"7. *How much do you allow, if any, because of the first foreclosure suit in 1890?* A. *The entire damage.*

"8. Did the plaintiffs, or either of them, ever pay any part of the principal of the note given as the purchase-price of said land? A. Yes, we consider every twelve dollars tendered before maturity of the note as part payment on principal."

Plaintiffs having remitted the interest, judgment was entered on the verdict. Defendant brings error.

From the allegations of the petition, it is evident that a cause of action was stated for breach of the contract made between the parties. It is also apparent that the pleader placed much reliance on the alleged wanton, wrongful, malicious and premature bringing

of the foreclosure action.   No motion or demurrer was leveled at the petition.   An examination of the record discloses ample evidence to support a judgment of damages, in some amount, for breach of contract, but the jury found the entire damages awarded plaintiffs to have been sustained as a result of the premature bringing of the foreclosure action. · As a necessary consequence, all damages for the breach of the express covenants of the contract are thus eliminated from this controversy, and the entire judgment must rest alone upon a consideration of the nature of the cause of action for the wrong alleged to have been sustained by plaintiffs in the premature institution and prosecution of this foreclosure action.

While by provision of the civil code the common-law forms of action are expressly abolished, yet it is true, and ever must remain true, in any orderly administration of justice, that the precise nature of the cause of action must be determined before the rules of law applicable thereto can be ascertained and applied.   Any· other method of procedure must of necessity lead to inextricable confusion.   As well, and with as much propriety, might a physician attempt the treatment of a patient without a diagnosis and knowledge of the ailment from which the patient suffers.   As was held by the court in *Grentner v. Fehrenschield*, 64 Kan. 764, 68 Pac. 619 : .

"The plaintiff must frame his petition upon a distinct and definite theory, and upon that theory the facts alleged must state a good cause of action.   If the petition is not drawn upon a single and definite theory, or there is such a confusion of theories alleged that the court cannot determine from the general scope of the petition upon which of several theories a recovery is sought, it is insufficient."   .

What legal effect may be given the allegations in

relation to the foreclosure action? Do they form a part of the cause of action for breach of contract, or must they be regarded as introducing a separate cause of action? Counsel for the respective parties do not agree on this question. The theory of counsel for plaintiff in error, at least in this court, is that the allegations in relation to the premature attempt to foreclose the mortgage are separate and apart from the action for breach of the contract, and must be regarded as an action for "slander of title." We are not inclined to adopt this theory as to the nature of the action. Mr. Newell, in his work on Slander and Libel, second edition, page 203, defines the right of action for slander of title to be in case "any one who falsely and maliciously defames the title of property, either real or personal, of another, and thereby causes him some special pecuniary damage or loss." As defendant at all times conceded the absolute title and right of possession of the property in question to be in the plaintiff, subject to the lien of its mortgage, and did not assert to the contrary, no question of title, or the defamation of plaintiffs' title, was alleged against defendant.

The theory of counsel for defendants in error is that the premature bringing of the foreclosure action constituted a breach of the implied terms of the contract between the parties, and hence the entire action is one for damages for breach of contract. But as the right to a timely foreclosure of the mortgage in case of default was not contracted against, and as a premature attempt at foreclosure could not have been anticipated, the contract being silent, it cannot be thought that the question of a foreclosure of the mortgage was in contemplation of the parties at the time of the making of the contract. The refusal of the defendant to execute the releases for lots sold, as covenanted in the

contract, and as found by the jury from the evidence, constitutes an express violation of the contract, for which breach, if damage ensued, a cause of action accrued to plaintiffs, but such damage cannot be enhanced by the intent with which defendant committed the breach. In *Ice Co. v. Wylie*, 65 Kan. 104, 107, 68 Pac. 1087, it, was said :

"The intent with which the contract was violated did not furnish a cause of action, but the fact of the breach, disassociated from the reasons for it. The wilfulness of a party in refusing to carry out a contract does not in any way change the rule of damages. It is the same whether the breach results from mistake, accident, or inability to perform it, or whether it be wilful and malicious." (3 Par. Cont. 166 ; *Stranahan Co. v. Coit*, 55 Ohio St. 398, 407, 45 N. E. 634.)

Therefore, if the wanton, wilful, malicious and premature bringing of the foreclosure action, as alleged in the petition, is to perform any office or give rise to any cause of action or right to damages in this case, it must form the basis of an independent right of action, not flowing from the contract but disassociated from an action on the contract, and must be governed and controlled by the rules of law applicable to such an action. From a consideration of the allegations of the petition, we conclude that the pleader had in mind and alleged, or attempted to allege, a cause of action for the "malicious prosecution of a civil action." The jury having determined the entire damage suffered by plaintiffs to have been occasioned by the premature prosecution of this foreclosure action, it only remains for us to determine whether the petition alleged sufficient facts to entitle plaintiffs to a recovery for such action, and whether the proofs were sufficient to support the judgment rendered.

Upon this theory of the case, it is contended that

Investment Co. v. Burdick.

the allegation of damages found in the petition is general and must be special. In this state, contrary to the rule in many jurisdictions, an action may be maintained for the "malicious prosecution of a civil action" where the defendant in such prosecution alleges and shows that he has sustained any damage over and above the taxable costs in the case. (*Marbourg v. Smith*, 11 Kan. 554; 19 A. & E. Encycl. of L., 2d ed., 652.) The facts necessary to be alleged and proved in order to maintain an action for "malicious prosecution of a civil action" are the same as those required to sustain an action for malicious prosecution of a criminal case.' (*Wilcox v. McKenzie*, 75 Ga. 73.) In this case, before plaintiffs could recover for the malicious prosecution of the foreclosure action, it was incumbent on them to allege and prove the prosecution of the foreclosure action against them, without probable cause and with malice, the termination of such action in favor of plaintiffs, and their damages, for such are the constituent elements of such an action. (*Malone v. Murphy*, 2 Kan. 250; *Marbourg v. Smith*, supra; 19 A. & E. Encycl. of L., 2d ed., 653.)

Applying these principles to the pleadings and evidence in the case at bar, it is very evident a reversal of the judgment must follow. While the petition alleged the foreclosure action to have been prematurely brought and malicious, yet there was no averment of want of probable cause, and there was an entire absence of proof of malice and want of probable cause in the evidence.

It follows that the judgment must be reversed, and the cause remanded for a new trial in accordance with this opinion.

All the Justices concurring.