## ROBBERSON v. GIBSON.

No. 8169—Opinion Filed Jan. 30, 1917.

(162 Pac. 1120.)

1. **Animals—Licenses—Municipal Corporations—Dogs — Statutes—"Tax" — "Due Process of Law."**

Statutes and ordinances may be passed regulating, restricting, or even prohibiting the running at large of dogs in an incorporated town; and this although dogs are unquestionably property. The owners, keepers, or harborers of dogs in an incorporated town may be required to register the same, and to pay a registration fee therefor, although this fee may in one sense be a tax though not a tax within the meaning of sections 5 and 14, art. 10, of the state Constitution. Dogs in incorporated towns may be classi-

fied, and the owners, keepers, or harborers thereof may be required to register all the dogs of one class and not the dogs of another class, and to pay a greater registration fee for the registration of the dogs of one class than for the registration of the dogs of another class; and such owners, keepers, or harborers of dogs may also be required to put collars around the necks of their dogs; and any dog found running at large in an incorporated town, in violation of the statutes or ordinances, may be summarily destroyed. All this is constitutional and valid, and is "due process of law"; and by the same no one is denied "the equal protection of the laws."

2. **Malicious Prosecution — Instructions— Propriety.**

Certain instructions given by the trial court examined, and held to be erroneous.

3. **Malicious Prosecution—Actions — Elements.**

The elements entering into and necessary to be shown in a suit for damages for malicious prosecution are: (1) That a prosecution was commenced against plaintiff; (2) that it was instituted or instigated by defendant; (3) that it was malicious; (4) that it has been legally and finally terminated in plaintiff's favor; (5) that it was without probable cause.

4. **Malicious Prosecution—Action — Recovery.**

The evidence in the trial court clearly discloses that the plaintiff, Gibson, voluntarily pleaded guilty to the criminal charge before the justice of the peace.

5. **Malicious Prosecution — Question for Court.**

Where the substantial facts to probable cause are not disputed, whether they are sufficient to constitute probable cause is for the court.

6. **Malicious Prosecution—Actions—Demurrer to Evidence.**

The court erred in not sustaining the defendants' demurrer to the evidence, interposed at the close of all the testimony taken upon the trial of the cause, and in refusing to direct a verdict in favor of defendant.

(Syllabus by Davis, C.)

Error from District Court, Lincoln County; Chas. B. Wilson, Jr., Judge.

Action by B. H. Gibson against N. S. Robberson. There was a judgment for plaintiff, and defendant brings error. Reversed and remanded, with instructions.

J. J. Davis and W. J. Davidson, for plaintiff in error.

F. A. Rittenhouse, for defendant in error.

Opinion by DAVIS, C. The causa belli in this case is a dog. B. H. Gibson owned same. She was a canine of the feminine persuasion. She ran at large around, about, and in the incorporated town of Davenport, Lincoln county, state of Oklahoma. She was unmarked, unbranded, untagged, uncollared, unlicensed, untaxed, unrestricted, and unrestrained. This was in the year of our Lord 1915.

Section 680, Revised Laws of Oklahoma 1910, amongst other things, provides that the board of trustees of an incorporated town in this state shall have power to levy and collect annually a tax of $1 on each male dog, and $2 on each female dog owned and kept within such town; to enact fines, penalties, and forfeitures for violation of this chapter, or of any by-law or ordinance by them established, not exceeding $25 for any one offense, which may be recovered by action, in the name of the corporation; but such board may remit the whole or any part of the fine, penalty, or forfeiture. Provided, that the fine assessed for the violation of any ordinance requiring a license shall not be less than the amount required to be paid for such license, although it may exceed the sum of $25: Provided, further, that such penalty or fine shall not exceed the penalty or fine provided by the statutes of the state for like offenses.

Section 731, Rev. Laws 1910, reads as follows:

"In all trials for offenses under the ordinances of an incorporated town, if the defendant be found guilty such justice of the peace shall render judgment accordingly. It shall be part of the judgment that the defendant stand committed until the judgment be complied with, in no case to exceed one day for every seventy-five cents of the fine and costs assessed against said defendant."

Section 732, Rev. Laws 1910, reads as follows:

"Any person convicted before such justice of the peace for any offense under the ordinances of the town shall be punished by such fine as may be prescribed by ordinance, and the said justice of the peace shall not remit the said fine, or any part thereof, without the consent of the said trustees of such town; said consent of such trustees to be given to said justice of the peace by an order of such trustees in a regular or called session of such town trustees."

Hence we find an express grant of power by the people through their Legislature to punish a person found guilty of the violation of an ordinance of an incorporated town

of our state by imprisonment until the judgment be complied with.

"In this country it is not unusual to provide, in the organic act of municipal corporations, that if fines for violation of by-laws or ordinances are not paid, the offender may be committed to prison for a limited period. And in respect to some offenses public in their character, the power to imprison in the first instance is often conferred. It is scarcely necessary to add that unless the authority be plainly given, it does not exist; and when given, before it can be exercised there must be a judicial ascertainment by a competent tribunal or magistrate of the guilt of the party." Dillon's Municipal Corporations, vol. 1, p. 353, sec. 353 (287), Third Ed. 1881, and cases cited in the notes.

Under these statutes, supra, and by authority thereof the incorporated town of Davenport passed the following ordinance:

"Ordinance No. 9.

"An ordinance providing for licensing and to regulate the keeping and harboring of dogs in the town of Davenport, Oklahoma.

"Be it ordained by the president and board of trusteees of the town of Davenport, Oklahoma:

"Section 1. Any person owning, keeping or harboring a dog within the corporate limits of the town of Davenport, Oklahoma, shall pay to the town clerk annually the sum of $1.00 for each male dog and $2 for each female dog.

"Sec. 2. It shall be the duty of said clerk to received said tax and to issue a receipt therefor and also a metal check or tag, which check or tag the owner shall place on said dog, and any dog found upon the streets of Davenport without the check or tag shall be taken and impounded by the marshal of said town until the owner of said dog shall redeem it by paying the license and 50 cents for marshal fees. If it be not redeemed within 5 days it shall be killed by the marshal who shall receive 25 cents for such service.

"Sec. 3. Any person owning, keeping or harboring any dog within the said town of Davenport, without first paying the license therefor, as hereinbefore provided, shall, on conviction thereof, be fined in any sum not less than two dollars nor more than ten dollars, and be committed until such fine and costs are paid.

"Sec. 4. That an emergency exists, and that this ordinance shall be in full force and effect from and after its passage and approval.

"Passed and approved this 21st day of January, 1907. M. J. Baugus, "President.

"Attest: Chas. T. Hedges, City Clerk. "(Seal.)"

The defendant below, plaintiff in error here, N. S. Robberson, was town marshal of the incorporated town of Davenport, aforesaid, during the year 1915, and as such marshal, acting under said ordinance, and under this further ordinance:

### "Ordinance No. 26.

"An ordinance concerning the collection of taxes on dogs.

"Be it ordained by the board of trustees of the town of Davenport, Oklahoma, as follows:

"Section 1. The city marshal shall collect all taxes assessed on dogs owned by citizens of the town of Davenport and give his receipt for the same. All collections of said dog taxes to be done in all respects, in strict accordance with the ordinances in such cases made and provided. The city marshal to receive 25 per cent. of all taxes so collected.

"Sec. 2. As fast as said dog taxes are collected by city marshal they shall be turn ed into the town treasury and the name of the person or persons paying the same shall be duly entered of record and due credit given for said taxes on the records kept for that purpose.

"Sec. 3. All ordinances in conflict with the provisions of this ordinance are hereby repealed.

"Sec. 4. There being an emergency within the meaning of the law this ordinance shall be in full force and effect from and after its passage and approval.

"Passed and approved this 30th day of July, 1907.

"M. J. Baugus, Chairman Board of Trustees.
"(Seal.) Attest:
"Chas. T. Hedges, Town Clerk."

—repeatedly besought and earnestly importuned the said Gibson to comply with said ordinance of said town, No. 9, supra, and pay said license on said unleashed female canine. This the said Gibson persistently declined, neglected, and refused to do, telling said Robberson to run down, corral, and otherwise impound said dog, but that owing to the fact that the blue blood of high breeding coursed through her veins, and that she was expected soon to enter the realms of maternity, he did not want her in bad company and did not want her injured in any way, and that he would love to have her fed on ham and eggs twice a day. No such menu for female canines having been provided for by said town the said Robberson declined to do so, and demanded the license. Gibson not paying the same, Robberson made the following complaint before E. B. Moore, justice of the peace of said town:

"Criminal Complaint—Justice Court.

"State of Oklahoma, Lincoln Co.—ss.

"Before E. B. Moore, Justice of the Peace in and for Davenport, in said County.

"Town of Davenport, Plaintiff, v. B. H. Gibson, Defendant.

"Before me the undersigned justice of the peace within and for Davenport, in said county personally appeared N. S. Robberson on this the 26th day of March, 1915, and being by me first duly sworn says that on the 26th day of March, 1915, in the county of Lincoln and state of Oklahoma, one B. H. Gibson, then and there being did then and there willfully, unlawfully refuse to pay dog tax as provided in section 3, Ordinance No. 9, of the ordinances of the town of Davenport, Okla. Contrary to the form of the statutes in such cases made and provided and against the peace and dignity of the town of Davenport. N. S. Robberson.

"Subscribed and sworn to before me this the 26th day of March, 1915.

"E. B. Moore, Justice of the Peace."

Upon this complaint, as he had the right to do under chapter 10, art. 16, Rev. Laws of Oklahoma 1910, said justice of the peace issued the following warrant of arrest:

"Criminal Warrant-Justice Court.

"State of Oklahoma, Lincoln County—ss.

"To the Sheriff or any Constable of Said County:

"Complaint, upon oath, having been this day made before me, E. B. Moore, a justice of the peace in said county and state, by N. S. Robberson, that the offense of refusing to pay dog tax has been committed, and accuses B. H. Gibson thereof, you are therefore commanded forthwith to arrest the above-named B. H. Gibson and bring him before me forthwith at my office in Davenport.

"Witnesseth my hand, at my office in Davenport, in said county this 26th day of March, 1915.

"E. B. Moore, Justice of the Peace."

This warrant of arrest contains the following return:

"Officers' Return.

"Received this writ the 26th day of March, 1915, and executed it by arresting B. H. Gibson, and now have his body before this court.

"N. S. Robberson, Marshal.

"Fees: Arresting 1 person, $1.00.

"Bringing prisoner into court, $.50."

In the presence of the magistrate on this charge the record shows the said Gibson pleaded guilty, and what happened then and there is expressed by him in his sworn testimony as follows:

"Q. When he arrested you where did he take you? A. Took me down to E. B. Moore's office. Q. What happened at E. B. Moore's office? Did they read the complaint to you? A. Yes, sir. Q. What did you tell them? A. I told them; they asked me if I was guilty or not guilty, and I think I told them if I owned a dog I was guilty of not paying Mr. Robberson any dog tax for that amount or something of that kind. Q. Then what did they do to you? A. They tried me. Q. What did they do? A. They put a fine on me of $2, and I told them I couldn't pay it. Q. How much money did you have? A. Seventeen cents. * * * Q. Mr. Gibson, at the time you was brought before the justice of the peace and this complaint read to you, what did you say? A. What did I say? Q. Yes, sir. A. I told you a while ago what I said. Q. Tell us again. A. I asked what the charge was, and they told me. Q. What did you say? A. I said if I owned a dog I was guilty of not paying Mr. Robberson a dog tax. Q. You plead guilty? A. I plead guilty to it, to the charge; I said I hadn't paid Mr. Robberson any of the dog tax."

Thus it fully appears that Gibson knew and thoroughly understood the nature of the charge against him, and that he entered his plea of guilty thereto in the light of this perfect knowledge on his part. He made no objection to the complaint, but understanding it and understanding the nature and tenor of said Ordinance No. 9, supra, and realizing that he had been and was violating the same by letting his female canine run at large in said town without first complying with the terms and provisions thereof, admitted the crime and answered the demands of the law with an unfaltering "Guilty." This was sufficient.

"The complaint need not be framed with same degree of care and technical accuracy as required for information." State ex rel. Peterson v. Barnes, 3 N. D. 131, 54 N. W. 541; Jones v. Foster et al., 43 App. Div. 33, 59 N. Y. Supp. 738; State v. Reedy, 44 Kan. 190, 24 Pac. 66.

"In justices' courts nicety of pleading is not exacted in either civil or criminal cases." Ex parte Winston, 160 Cal. 18, 116 Pac. 390; Smith v. Jones et al., 16 S. D. 337, 92 N. W. 1084.

North and South Dakota and California have statutes practically the same as section 6142, Rev. Laws of Oklahoma 1910, relative to criminal complaints.

"The same degree of particularity in pleading is not required in actions before a justice of the peace that is required in courts of record, and a pleading that is sufficient in a justice's court is sufficient in an appellate court, where the cause is tried de novo. Garvin v. Harrell, 27 Okla. 373, 113 Pac. 186, 35

L. R. A. (N. S.) 862, Ann. Cas. 1912B, 744; Holden v. Lynn, 30 Okla. 663, 120 Pac. 246, 38 L. R. A. (N. S.) 239; White v. Oliver, 32 Okla. 479, 122 Pac. 156; Rice et al. v. Folsom, 32 Okla. 496, 122 Pac. 236." Whitcomb v. Oller et al., 41 Okla. 331, 137 Pac. 709; Idabel v. Harrison, 42 Okla. 469, 141 Pac. 1110.

Gibson was fined by said justice for a violation of said Ordinance No. 9, supra, in the sum of $2 and costs, amounting to $2.50, and failing to pay the same was duly committed to the town bastile of the ante bellum build and type. This was on March 26, 1915. After being socked into said calaboose, the said Gibson held the same by sockage tenure for the term and period of 2½ hours, when friends of his coming to his rescue, as all good friends should, but frequently don't, the fine and costs were raised and paid and the said Gibson duly released. The town authorities evidently considered the incident closed for the town marshal, Robberson, receipted Gibson for the dog license in the sum of $2 and delivered him said receipt along with the proper tag. This of course they could do, but were not obliged to do as Gibson had not paid, and has not yet paid, the license required by said ordinance, but only the fine and costs imposed upon him for a violation thereof.

Gibson sues Robberson for $5,000 damages, probably a sum slightly in excess of the value of his canine, in the district court of Lincoln county, Okla., alleging that his arrest and incarceration were unlawful and malicious, and that his health was injured on account of overventilation of said prison house. Upon a trial of said cause in said court to a jury the plaintiff recovered a verdict and judgment against the defendant in the sum of $200 and costs.

The court gave the jury the following instructions, numbered 5 and 7, respectively:

"The warrant relied upon by the defendant and the warrant under which the arrest was made and the judgment of the justice of the peace have been offered in evidence in this case, and you are instructed that the ordinance relied upon does not authorize an arrest for the failure to pay a dog tax in the town of Davenport, and that the warrant of arrest and conviction and commitment by the town justice of the peace were void and not a sufficient authority to warrant the arrest and conviction of any person thereunder.

"Excepted to by the defendant and exception allowed. Chas. B. Wilson, Jr., Judge."

"Under the evidence in this case the plaintiff is entitled to recover of and from the defendant some damages, but unless you find from a preponderance of the evidence that the detriment and injury which he suffered

by reason of the imprisonment and as a proximate result thereof was real and substantial, the damages allowed him should be nominal only.

"Excepted to by the defendant and exception allowed. Chas. B. Wilson, Jr., Judge."

The action on the part of the trial court in giving these instructions to the jury was duly excepted to at the time by the defendant, and said errors duly assigned as reversible errors in this cause on appeal. In the light of the law and the evidence in this case these instructions were clearly erroneous, highly prejudicial to the substantial rights of the defendant, and constitute reversible error. The warrant of arrest, the judgment of the justice of the peace, the ordinance relied upon (No. 9), supra, the conviction and commitment were legal and valid.

"The police power of the state has been exercised to regulate and control property in dogs to a greater extent than property in any other class of domestic animals, and because of their tendency to revert to their savage state and become a public menace it cannot be questioned that they are properly subject to such regulations, although the authorities are not always in entire agreement as to the course which such regulation may take, and its general effect. Such regulation, however, usually runs in the direction of imposing license taxes on the keeping of dogs, and providing for their summary destruction in case such requirement is not complied with. In this connection the exercise of the police power is distinguishable from the exercise of the power of taxation, and the imposition of license taxes on the owners of dogs may be sustained under the former, although under the latter they might be invalid because of inequality or lack of uniformity. In lieu of a license tax, statutes or ordinances are often passed seeking to prevent dogs from running at large unless properly registered, or muzzled, or unless wearing a prescribed collar or tag. Where provision is made for the summary destruction of dogs kept in violation of law, it is held with great unanimity by the courts that such regulations, no matter how stringent in character, nor how summary the proceedings, are entirely within legislative power, and free from constitutional objection, though the property of the owner is destroyed without notice or hearing in the execution of the law. Thus the courts have declared to be valid statutes and ordinances providing that all dogs shall be licensed, registered, etc., and that any dog found at large in violation of such requirement may be killed by any police officer, or other person, and where an officer is empowered to kill an unlicensed dog, 'whenever and wherever found,' he is not guilty of trespass if he peaceably enters the owner's house for that purpose. Where an unmuzzled dog has escaped confinement it has been held that it is 'running at large'

within the meaning of the prohibitory statute, and so may be lawfully killed, although it was at the time being closely pursued by the owner." 1 R. C. L. 1127-1129, and numerous leading authorities cited in the notes to this text.

See State ex rel. v. City of Topeka, 36 Kan. 76, 12 Pac. 310, 59 Am. Rep. 529, and numerous authorities cited therein. This case is very much in point with the instant case. Ex parte Ackerman, 6 Cal. App. 5, 91 Pac. 429, and cases therein cited.

At the close of all the evidence in the case the defendant demurred to it and moved the court for an instructed verdict in his favor. This was refused and exceptions duly saved, and this action on the part of the trial court duly assigned as reversible error on appeal. In this we hold that the contention of defendant was and is right.

It seems clear from the authorities that where accused has been arraigned and pleaded guilty to the charge, he is not permitted to maintain an action for false imprisonment or malicious prosecution, especially when that plea was not obtained by duress or fraud, no suggestion of which appears in this case.

In the case of Jones v. Foster et al., 43 App. Div. 33, 59 N. Y. Supp. 738, there was a plea of not guilty, but it was subsequently withdrawn and a plea of guilty made and fine and license fee for hawking under a village ordinance paid in preference to incarceration, and it was held that the action for false imprisonment against the president, trustees, police justice, clerk, and two policemen would not lie. In the opinion the court remarked:

"They were engaged, apparently, in an honest attempt to enforce an ordinance of the village. With that duty they were charged. The president and trustees were serving without compensation, and yet, without any malice on their part, they are suffering under a verdict at the instance of a confessed violator of the village ordinance. The verdict does not merely represent the compensatory damages which the plaintiff sustained, if any, but includes a liberal toll as smart money. The verdict is unjust, and is not supported by the evidence. Men in official positions, fairly endeavoring to discharge their duties, should not be lightly put to the penalty of paying damages in upholding the laws of the state. It is a sad commentary on the conduct of fearless public officers when they are amerced in damages to vindicate a man who has openly confessed his crime by a plea of guilty."

To the same effect is the case of Cuniff v. Beecher, Sheriff, 84 Hun, 137, 32 N. Y. Supp.

1067. Quoting from the opinion we read in this case:

"'* * * I think that it is the law of the state that a party cannot maintain a civil action for damages, for malicious prosecution, or false imprisonment where his arrest has been followed by conviction in a criminal court, and that conviction remains unreversed, unless he establishes the fact that his conviction was obtained by fraud or conspiracy, and that fraud or conspiracy must be one in which the court and the person by whom he is proceeded against participated. Judgments of conviction in criminal cases cannot be attacked collaterally by the persons convicted. The spectacle of a convicted defendant in a criminal case securing damages in a civil action, because of his arrest upon the charge for which he had been criminally convicted, would destroy all respect for the law, and would paralyze those provisions of our statutes authorizing private persons to arrest for crime, and authorizing peace officers to arrest without warrant. The person who is, or who believes himself to have been, unjustly arrested and convicted, must procure a reversal of such judgment of conviction before he can maintain a civil action for damages.'"

See, also, Robbins v. Robbins, 133 N. Y. 597, 30 N. E. 977; Oppenheimer v. Railway Company, 18 N. Y. Supp. 411.

In the case of Holder v. St. Louis, S. F. R. Company, 155 Mo. App. 664, 135 S. W. 507, a decision by the St. Louis Court of Appeals, rendered March 4, 1911, an action for false imprisonment, the first syllabus is as follows:

"A judgment of conviction for a misdemeanor is conclusive as to the guilt of defendant, and cannot be contradicted in a collateral proceeding."

Held, in this case, too, that a plea of guilty was a complete defense to the action for false imprisonment, although the arrest was made by the officer without a warrant and having no authority to make an arrest in the country where the arrest was made. The court held also that the trial court should have directed the jury that plaintiff's plea of guilty and its acceptance by the justice giving judgment thereon concluded the whole matter to the effect that his arrest was not wrongful. See State v. Meyers, 99 Mo. 107, 12 S. W. 516; 6 Am. & Eng. Ency. Law (2d Ed.) 59; 12 Cyc. 353, supporting the same principle. Also Erie Railroad Co. v. Reigherd, 166 Fed. 247, 92 C. C. A. 590, 20 L. R. A. (N. S.) 295, 16 Ann. Cas. 459; Neimitz v. Conrad et al., 22 Or. 164, 29 Pac. 548; Pierce v. Mitchell, 77 Wash. 453, 137 Pac. 1008; Comstock v. Eagleton, 11 Okla. 487, 69 Pac. 955; Flamm v. Wineland et al., 41 Okla. 688,

139 Pac. 961, and cases therein cited; Roby v. Smith, 40 Okla. 280, 138 Pac. 141; Central Light & Fuel Co. v. Tyron, 42 Okla. 86, 140 Pac. 1151; Carbondale Inv. Co. v. Burdick, 67 Kan. 329, 72 Pac. 781.

In an action for malicious prosecution, the question of probable cause, where the substantial facts relating thereto are admitted, whether or not they are sufficient to constitute probable cause is a question of law for the determination of the court. Bell v. Keepers, 37 Kan. 64, 14 Pac. 542; Parli v. Reed, 30 Kan. 534, 2 Pac. 635; Turney v. Taylor, 8 Kan. App. 593, 56 Pac. 137.

In bringing to a determination this chapter in our jurisprudence on "dog law," which is sometimes harder to define than "dog Latin," it follows that the judgment of the lower court is reversed, the cause remanded, with directions to set aside said judgment and verdict and to grant the defendant, Robberson, a new trial, and to sustain the defendant's demurrer to all the evidence in the case, and motion for an instructed verdict in his favor herein, and to render judgment that plaintiff take nothing as against the defendant, and that defendant have judgment against plaintiff for his costs, and that execution may issue therefor.

By the Court: It is so ordered.