STATE of Maine

v.

Ralph T. CLARKE.

Supreme Judicial Court of Maine.

Jan. 11, 1979.

David W. Crook (orally), Deputy Dist. Atty., Skowhegan, Sarah E. Redfield (orally), Asst. Atty. Gen., Augusta, for plaintiff.

Ralph T. Clarke, pro se (orally).

Before McKUSICK, C. J., and WER-NICK, ARCHIBALD, DELAHANTY and NICHOLS, JJ.

NICHOLS, Justice.

By District Court complaint dated November 2, 1977, the Defendant, Ralph T. Clarke, was charged with keeping, on October 13, 1977, an unlicensed dog in violation of 7 M.R.S.A. § 3451 (Supp.1977).[1] After transfer to the Superior Court in Somerset County, the case was tried, jury waived, upon an agreed statement of facts, resulting in a finding of guilty and a judgment of conviction. The Defendant appeals, claiming in this Court, as he had in Superior Court, that the "dog license" statute is unconstitutional.

We deny the appeal.

On October 13, 1977, the Defendant was the keeper of a seventeen-year-old German shepherd dog. Although the Defendant had licensed the dog in the previous two years, he refused to purchase the required tag in 1977, thereby violating 7 M.R.S.A. § 3451 (Supp.1977). He based his refusal upon a contention that the dog licensing statute violated both the due process clause and the equal protection clause of the

---

1. 7 M.R.S.A. § 3451 (Supp.1977) provides in pertinent part:

Each owner or keeper of a dog of the age of 6 months or over, except dogs kept under a kennel license as provided in this section, shall, on or before January 1st, annually, or at such time as such dog becomes 6 months old, cause such dog to be licensed in the municipal clerk's office in the town where such dog is kept.

Maine and United States Constitutions, and he also asserted that the statute represented an improper exercise of legislative power under the Maine Constitution.

Before we can address the merits of the Defendant's constitutional contentions, we must first resolve a potentially dispositive threshold question.

On November 2, 1977, the complaint initiating this case as a criminal prosecution was filed in Maine District Court, District Twelve (Skowhegan). Without trial or judgment in the District Court, the case was, pursuant to Rule 40, D.C.Crim.R.,[2] transferred to the Superior Court, in which trial was had on the merits. At all times, from the filing of the complaint in the District Court through the filing of the record on appeal and briefs in this court, the case has been treated as a *criminal* and not a *civil* case.

■■■■ The threshold question arises from uncertainty over whether the decriminalization of the conduct proscribed by the "dog license" statute, effective October 24, 1977, (midway between the date of the offense, October 13, 1977, and the date of the com-

plaint, November 2, 1977) had the effect of prohibiting the transfer of the case from the District Court to the Superior Court.

7 M.R.S.A. §§ 3451 and 3701, in combination, declare that whoever keeps an unlicensed dog over six months of age "shall be punished by a fine of not more than $25.00 to be recovered by complaint before any District Court."[3] Since there is thus no possibility of punishment by imprisonment for the crime here charged, this offense falls within those decriminalized by the Maine Criminal Code. *See* 17–A M.R.S.A. § 4–A(4) (Supp.1977). Although the Code in general became effective on May 1, 1976, *see* 17–A M.R.S.A. § 1(2) (Supp.1977), the decriminalization provision found in § 4–A(4) did not become operative until October 24, 1977 (P.L.1977, c. 564, § 84), eleven days *after* the date of the alleged crime of this Defendant. The Legislature, realizing that the Code repealed those crimes superseded by its terms, enacted a "saving clause",[4] thereby avoiding the possibility that a prosecution for a crime committed prior to May 1, 1976, which was not commenced until after May 1, 1976, might fail due to the

---

2. Rule 40, D.C.Crim.R., provides in pertinent part:
   In all prosecutions in the District Court the Defendant, after arraignment and plea of not guilty, may request that the action be transferred to the Superior Court.

3. We do not understand the language of 7 M.R.S.A. § 3701 to prohibit a defendant from transferring his case to the Superior Court, provided it was a criminal case. Rather, we read the language, "to be recovered by complaint before any District Court," to require only that any proceeding under § 3701 be commenced by a complaint filed in the District Court. There is nothing in § 3701 to suggest that the "dog license" prosecution once commenced in the District Court is not subject to the usual statutory provisions permitting either transfer or *de novo* appeal to the Superior Court. Indeed, the statutes make the contrary clear. By 15 M.R.S.A. § 2114 (Supp.1975), the Legislature granted defendants in the District Court the right to transfer *all* misdemeanor prosecutions to the Superior Court. *See also* Rule 40, D.C.Crim.R. ["*all* prosecutions in the District Court may be transferred (Emphasis added)]." Likewise, 15 M.R.S.A. § 2111 (Supp.1975) gives "[a]n aggrieved defendant," without limitation, the right to appeal from any judgment in the District Court, and in the Superior Court on ap-

peal, that "appellant shall be entitled to a trial *do novo.*" Rule 39(b), D.C.Crim.R.

4. The "saving clause" is found in 17–A M.R.S.A. § 1(2) (Supp.1977), which states:
   *Except as provided in section 4–A, this code* shall become effective on May 1, 1976, and it shall apply only to crimes committed subsequent to its effective date. Prosecution for crimes repealed by this code, which are committed prior to the effective date shall be governed by the prior law which is continued in effect for that purpose as if this code were not in force; provided that in any such prosecution the court may, with the consent of the defendant, impose sentence under the provisions of the code. In such cases, the sentencing authority of the court is determined by application of section 4–A, subsection 3, to prior law. For purposes of this section, a crime was committed subsequent to the effective date if all of the elements of the crime occurred on or after that date; a crime was not committed subsequent to the effective date if any element thereof occurred prior to that date, or if the evidence may reasonably be interpreted to establish that any element may have occurred prior to that date.

lack, at the time of the prosecution, of any then-effective statute creating a substantive offense. Although § 4–A(1)(B) clearly sets October 24, 1977 as the effective date for § 4–A(4), the "saving clause" raises the question whether the Code or prior law controls a prosecution, commenced *after* that effective date of the Code, for a crime committed *prior to* that effective date. If the Code applies to such proceedings, the Superior Court would have been prohibited from accepting transfer of this case from the District Court.[5]

The answer to the problem lies entirely within an interpretation of 17–A M.R.S.A. § 1(2).[6] The first sentence of that section states that "*except as provided in section 4–A*, this code shall become effective on May 1, 1976, and it shall apply *only* to crimes committed *subsequent* to its effective date." (Emphasis added). The second sentence deals solely with crimes repealed by the Code; and, since 7 M.R.S.A. §§ 3451, 3701 (Supp.1977, 1973), were not repealed by the Code, that sentence has no application to the situation before us. § 1(2), therefore, must, if at all, control through its first sentence. If the applicable effective date of § 4–A(4) is inserted into the first sentence of § 1(2), it would in effect read: § 4–A "shall become effective [October 24, 1977] and shall apply only to crimes committed subsequent to its effective date." Thus, the conclusion becomes inescapable that the decriminalization provided for in § 4–A(4) became operative *only on and after* October 24. Since the crime alleged herein was committed on October 13, it could not have been decriminalized, and pri-

or law, by the very terms of § 1(2), would be applicable. To reach a contrary conclusion we would have to ignore the general statutory framework of § 1(2), *i. e.*, that the whole Maine Criminal Code, save § 4–A, shall *only* become effective as of a certain date, namely May 1, 1976. We see no reason not to apply the same general rule to the proviso at the beginning of the first sentence of § 1(2), merely substituting October 24, 1977 for May 1, 1976, as required by § 4–A(1)(B).

Our conclusion is further supported by the third sentence of 17–A M.R.S.A. § 1(2), which given the defendant's consent, allows a court to apply the sentencing provisions of § 4–A(3) to crimes committed prior to the effective date of the Code. This sentence would be mere surplusage if the Legislature had intended the Criminal Code to apply to crimes committed before the Criminal Code's effective date as well as those committed thereafter. Indeed, the third sentence of § 1(2) evidences a legislative effort to carve out a specific statutory exception to the general rule regarding the Criminal Code's application.

Finally, the general tone of the whole of 17–A M.R.S.A. § 1(2) supports our reading of the first sentence. At the same time the Legislature added § 4–A to the Criminal Code (P.L.1975, c. 740, § 14), it also amended § 1(2) of the Criminal Code (P.L.1975, c. 740, § 10).[7] The substantive effect of the amendment was to grant the benefit of every doubt to application of pre-Code law. Only where every element of the crime is committed on or after the effective date does the Code apply; if the evidence is at

---

5. If keeping a dog without a license had been decriminalized prior to October 24, 1977, the only remedy available to the State would have been civil in nature, thereby invoking the Rules of Civil Procedure. Rule 80H(g), D.C.Civ.R., as amended October 24, 1977, expressly provides that there can be no removal of civil violation proceedings from the District Court to the Superior Court. Civil violation proceedings must run to judgment in the District Court, with the Superior Court entertaining only questions of law on appeal. *See* Rule 73(a), D.C.Civ.R.

6. With the exception of § 4–A(1)(B), which was subsequently amended by P.L.1977, c. 564,

§ 84, to extend its effective date from October 1, 1977 to 90 days after the adjournment of the 108th Legislature, *i. e.*, October 24, 1977, § 4–A as well as § 1(2) came into the Code in their present form in P.L.1975, c. 740, §§ 14, 10, respectively.

7. P.L.1975, c. 740, § 10 added, *inter alia*, the following clause to the end of the fourth sentence of § 1(2):

or if the evidence may reasonably be interpreted to establish that any element may have occurred prior to that date.

*See* note 4 above for the rest of the language of the fourth sentence of § 1(2).

all ambiguous as to the exact date an element of the crime took place, all reasonable doubt *must* be resolved in favor of the crime's having taken place prior to the effective date, thereby invoking pre-Code law. Thus, the legislative intent was not to reach backward to expand the applicability of the *Criminal Code* (or § 4–A with a deferred effective date), but rather to apply the new law only prospectively; that is, to prohibit conduct occurring *only* on or after the effective date. We find no reason to depart from what the Legislature sought to accomplish by its promulgation of § 1(2) and § 4–A. We therefore hold that 7 M.R.S.A. § 3451 (Supp.1977) and its corresponding punishment provision, 7 M.R.S.A. § 3701 (Supp.1973), remained fully effective on October 13, 1977, and that the Superior Court quite appropriately tried this case on transfer from the District Court as a criminal case.

We move on to the substantive issues raised on this appeal.

■■■ Citing the due process clauses of the Maine Constitution (Art. 1 § 6–A) and United States Constitution (XIV amend.) as well as the legislative power clause (Art. IV, pt. 3, § 1) of the Maine Constitution, the Defendant contends that 7 M.R.S.A. § 3451 (Supp.1977) is unconstitutional. The Defendant's argument, which we reject, is that the dog licensing statute, as applied to a dog kept on the owner's property and under his control, bears no substantial relationship to public health, safety, morals or general welfare.

For reasons relating primarily to the health and safety of the community, the State has a significant interest in regulating and controlling dogs. *Sentell v. New Orleans and Carrollton R.R. Co.,* 166 U.S. 698, 706, 17 S.Ct. 693, 41 L.Ed. 1169 (1897); *Blair v. Forehand,* 100 Mass. 136, 141 (1868); *Rapid City v. Tuning,* 82 S.D. 442, 147 N.W.2d 604, 605 (1967).

One of the purposes of requiring a dog license is to ensure that the dog has been immunized against rabies. As set forth in 7 M.R.S.A. § 3451 (Supp.1977), "No city or town clerk shall issue a license for any dog until the applicant has filed with such clerk proof that such dog has been immunized against rabies . . . ." Furthermore, the Legislature has recognized that dogs, while ordinarily harmless, may occasionally be or become violent causing injury to humans, 7 M.R.S.A. § 3604 (Supp.1977), livestock and poultry, 7 M.R.S.A. § 3602 (Supp. 1977). The license requirement is an eminently reasonable method for controlling rabies as well as tracing the dog's owner so that such owner can answer in damages, 7 M.R.S.A. § 3651, or fine, 7 M.R.S.A. § 3652 (Supp.1977). Moreover, this licensing requirement has the salutary effect of permitting notice to be given to a dog's owner prior to its possible destruction so that the owner may, if he chooses, contest the issue of whether his dog is dangerous and vicious. 7 M.R.S.A. § 3605 (Supp.1973). Defendant takes nothing by this argument.

As his second point the Defendant alleges an equal protection violation because there is no rational basis for distinguishing between dog owners and owners of other animals kept as pets which are not subject to a licensing requirement. We disagree.

■■■ A dog's potential for rabies and substantial violence generally sets it apart from other popular domestic animals. *Sentell v. New Orleans and Carrollton R.R. Co., supra* 166 U.S. at 701, 705, 17 S.Ct. 693; *Blair v. Forehand, supra* 100 Mass. at 141–42. Thus, the Legislature has long enacted statutes relating to dogs. *See Prescott v. Knowles,* 62 Me. 277 (1874). Prior to Maine's achieving statehood, the Commonwealth of Massachusetts had some type of canine control dating from at least 1715. *Blair v. Forehand, supra* 100 Mass. at 141. The licensing requirement of 7 M.R.S.A. § 3451 (Supp.1977) is rationally related to such differences. *Nadeau v. State,* Me., 395 A.2d 107 (1978). We find no equal protection violation. *See State ex rel. Curtis v. Topeka,* 36 Kan. 76, 12 P. 310 (1886) and *Robberson v. Gibson,* 62 Okl. 306, 162 P. 1120 (1917).

Finally, Defendant's argument that the legislative power was here improperly exercised is grounded in his assertion that under the statute there was for the dog impliedly "a license to run at large." As we have

seen, the statute serves other salutary purposes. These are purposes that properly fall within the police power. The police power, as we have observed, is older than any written constitution, and within such limitations as are expressly or necessarily implied by the constitutions, the authority of the police power is given effect by all courts. *Jordan v. Gaines*, 136 Me. 291, 295, 8 A.2d 585, 587 (1939). This argument by the Defendant also must be rejected.

The entry, therefore, is:

Appeal denied.

Judgment affirmed.

POMEROY and GODFREY, JJ., did not sit.