IN THE SUPREME COURT OF NORTH CAROLINA

No. 319PA14

Filed 21 December 2016

KIRK ALAN TURNER

v.

SPECIAL AGENT GERALD R. THOMAS, in his individual capacity and, in the alternative, in his official capacity; SPECIAL AGENT DUANE DEAVER, in his individual capacity and, in the alternative, in his official capacity; ROBIN PENDERGRAFT, in her individual capacity and, in the alternative, in her official capacity; and JOHN and JANE DOE SBI SUPERVISORS, in their individual capacities and, in the alternative, in their official capacities

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 235 N.C. App. 520, 762 S.E.2d 252 (2014), affirming in part and reversing in part an order entered on 11 April 2013 by Judge Stuart Albright in Superior Court, Forsyth County. Heard in the Supreme Court on 18 May 2015.

*Morrow Porter Vermitsky Fowler & Taylor, PLLC, by John C. Vermitsky, for plaintiff-appellee.*

*Roy Cooper, Attorney General, by Tammera Hill and J. Joy Strickland, Assistant Attorneys General, for defendant-appellants Thomas and Deaver.*

EDMUNDS, Justice.

In this case, we consider the tort liability of law enforcement agents when their criminal investigation went awry. Defendants Thomas and Deaver are or were at the time of the events in question agents of the State Bureau of Investigation (SBI) who participated in the investigation and prosecution of plaintiff for the murder of his wife. The remaining defendants are or were SBI policymakers responsible for

supervising SBI agents, including Thomas and Deaver. After plaintiff was acquitted on grounds of self-defense, he filed a civil complaint against defendants alleging numerous claims, including malicious prosecution and intentional infliction of emotional distress. The trial court granted motions to dismiss filed by all defendants pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, but the Court of Appeals reversed as to these two claims against Thomas and Deaver, reinstating the claims. We conclude that, because probable cause existed for the State to indict plaintiff for first-degree murder, plaintiff's suit for malicious prosecution necessarily would have failed. Accordingly, we reverse the holding of the Court of Appeals as to this claim. However, we agree with the Court of Appeals that, taken in the light most favorable to plaintiff, the complaint alleges elements of intentional infliction of emotional distress sufficient to withstand a motion to dismiss. Consequently, we affirm the holding of the Court of Appeals as to this claim.

On 12 September 2007, Kirk Alan Turner (plaintiff) and his friend Gregory Adam Smithson (Smithson) met at plaintiff's marital residence so Smithson could retrieve some property stored there. While at the home, plaintiff discussed personal matters with his wife Jennifer. During the conversation, Jennifer attacked plaintiff with a large spear, stabbing him multiple times in the thigh and groin area. In reaction, plaintiff pulled a pocketknife from his right front pocket and cut Jennifer twice in the neck, inflicting fatal injuries.

Smithson called 911 and performed CPR on Jennifer until emergency personnel arrived. The Davie County Sheriff's Office responded to the call and requested the assistance of the SBI. SBI Special Agent E.R. Wall arrived and notified SBI Assistant Special Agent in Charge K.A. Cline that a blood spatter expert would be needed to analyze the scene. Several hours later, Agent Wall called Agent Cline again to suggest that a blood spatter expert might not be needed after all because closer examination indicated that the blood spatter most likely was caused by arterial spurting from Jennifer's throat wound.

Two days later, Special Agent Gerald R. Thomas (defendant Thomas) arrived at plaintiff's home to conduct a blood spatter analysis of the scene. Later that day, he conducted a bloodstain analysis of various articles of clothing collected during the course of the investigation, including a gray T-shirt worn by plaintiff during the incident. Before beginning his examinations, defendant Thomas was informed by SBI Special Agent D.J. Smith that Jennifer apparently stabbed plaintiff with a spear and, in response, plaintiff cut her throat with a pocketknife. Defendant Thomas completed his examinations that same day and about two weeks later presented a written report documenting his findings. The report stated that a large bloodstain on plaintiff's gray T-shirt "was consistent with a transfer bloodstain pattern" resulting from a bloody hand being wiped on the shirt. The report further noted several smaller bloodstains that were consistent with blood dripping onto the shirt.

On 13 December 2007, plaintiff was indicted for the first-degree murder of Jennifer. He was initially denied bond and detained for one month before being released on a bond of one million dollars. Plaintiff had to borrow money from family and friends to post his bond and retain defense counsel.

The following allegations are taken from plaintiff's complaint. After plaintiff was indicted, defendant Thomas met on 15 January 2008 with SBI Special Agent Duane Deaver (defendant Deaver); Captain Jerry Hartman, lead investigator for the Davie County Sheriff's Office; a lawyer from the district attorney's office; and another individual identified in the pleadings only as "Mr. Marks" to discuss both the feasibility of plaintiff's version of the events and their own theory of the case. During this meeting, defendants Thomas and Deaver and their colleagues theorized that plaintiff killed Jennifer for the purpose of carrying out a scheme to avoid a divorce and subsequent equitable distribution proceeding. They additionally theorized that plaintiff stabbed himself with the spear and staged the scene to make the killing look like self-defense.

Plaintiff further alleged that, to prove their theory, defendants Thomas and Deaver needed to show that the bloodstain on plaintiff's T-shirt was not a mirror image stain from plaintiff's hand but was instead a transfer pattern consistent with plaintiff having wiped a knife on the shirt. With the alleged approval of defendant Pendergraft, their supervisor, defendants Thomas and Deaver conducted tests for the purpose of "shor[ing] up" this new theory. Defendant Thomas again took samples

from various evidentiary items for a second examination but failed properly to label his work in such a way that someone reviewing the evidence would be able to determine the source of each sample. Defendant Thomas also failed to make any record of the new theory. Defendants Thomas and Deaver videotaped their numerous attempts to duplicate with a knife the blood smear on the plaintiff's T-shirt. After a success, defendant Deaver can be heard on the video saying: "Oh, even better! Holy cow, that was a good one!" and "Beautiful! That's a wrap, baby!"

Plaintiff further alleged that, following the knife smear test and a second review of the evidence, defendant Thomas created a second written report that altered his initial report by replacing the words "consistent with a bloody hand being wiped on the shirt" with "consistent with a pointed object being wiped on the shirt." This second report purported to convey results of the "examination of clothing for bloodstain patterns on Friday, September 14, 2007," even though the true date of the second examination was 15 January 2008. Defendant Thomas's second report failed to indicate either that it was based on a second review of the evidence or that it was not the original report. Plaintiff alleged that defendants Thomas and Deaver conducted these tests not only to prove their theory that plaintiff did not act in self-defense, but "to maintain the appearance of probable cause where none existed and to obtain a first-degree murder conviction of [plaintiff] despite evidence to the contrary."

In his report, defendant Thomas stated that Captain Hartman told him "he was present when emergency services cut the gray T-shirt from Mr. Turner's body and that the question [sic] blood stain was observed present in its current condition on the shirt." The report further stated that "Hartman said that he took the shirt from Emergency Medical Services and placed it in a secure area [an adjacent room], laying flat on the floor to dry."[1]

At plaintiff's trial for Jennifer's murder, defendant Thomas gave testimony about plaintiff's T-shirt that was consistent with his report. However, Captain Hartman testified that he did not arrive at the crime scene until two hours after plaintiff was taken to the hospital and that he was not present when plaintiff's T-shirt was removed, contradicting defendant Thomas's account. In addition, crime scene photographs showed plaintiff's T-shirt "crumpled on the floor, inside out." Plaintiff's defense expert Stuart James disagreed with defendants' bloodstain analysis, giving opinion testimony that the bloodstain was most likely a "mirror stain" created either when the shirt was folded as emergency medical service technicians cut off the shirt or when they tossed it onto the floor. On 21 August 2009, the jury found plaintiff not guilty of the first-degree murder of his wife, by reason of self-defense.

---

[1] The complaint does not specify whether defendant Thomas included this information in his initial report or added it following his second examination of the evidence.

On 14 November 2011, plaintiff filed his original complaint in Superior Court, Forsyth County. On 4 April 2012, plaintiff voluntarily dismissed that complaint and immediately refiled a complaint making the same substantive allegations against the same defendants. In addition to defendants Thomas and Deaver, plaintiff named former SBI Director Robin Pendergraft and SBI supervisors John and Jane Doe as defendants in their individual and official capacities. Plaintiff's complaint alleged four causes of action against defendants Thomas and Deaver in their individual capacities: (1) intentional infliction of emotional distress, (2) abuse of process, (3) malicious prosecution, and (4) false imprisonment. The complaint also alleged negligence claims against defendants Pendergraft and John and Jane Doe. Finally, plaintiff alleged federal constitutional claims under 42 U.S.C. § 1983 against all defendants in their individual and official capacities, and claims under the North Carolina Constitution against all defendants in their official capacities.

In response, all defendants filed motions to dismiss all charges. At a hearing on the motions, plaintiff conceded that dismissal was appropriate for the section 1983 claims against all defendants in their official capacities, for the negligence claims, and for all claims against supervisors John and Jane Doe. On 11 April 2013, the trial court granted defendants' motions to dismiss plaintiff's remaining claims pursuant to Rules 12(b)(1) and 12(b)(6) of the North Carolina Rules of Civil Procedure.[2]

---

[2] It appears from the record that the citation to Rule 12(b)(1), lack of subject matter jurisdiction, refers to constitutional claims brought against defendants. None of those

Plaintiff appealed to the Court of Appeals, which affirmed the trial court's dismissal of all claims against defendants Pendergraft and John and Jane Doe. *Turner v. Thomas*, 235 N.C. App. 520, 524, 762 S.E.2d 252, 257-58 (2014). In addition, that court affirmed the trial court's dismissal of all claims against defendants Thomas and Deaver except for the claims for malicious prosecution, *id.* at 530, 762 S.E.2d at 261, and intentional infliction of emotional distress, *id.* at 537, 762 S.E.2d at 265. The Court of Appeals held that the trial court erred in dismissing these two claims, concluding plaintiff had alleged sufficient elements of both torts to survive a motion to dismiss. *Id.* at 540, 762 S.E.2d at 267. On 22 January 2015, we allowed petitions for discretionary review filed by defendants Thomas and Deaver (hereinafter, defendants).

In determining whether the trial court properly dismissed plaintiff's claims against defendants for malicious prosecution and intentional infliction of emotional distress, we consider "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted." *Newberne v. Dep't of Crime Control & Pub. Safety*, 359 N.C. 782, 784, 618 S.E.2d 201, 203 (2005) (quoting *Meyer v. Walls*, 347 N.C. 97, 111, 489 S.E.2d 880, 888 (1997)). "This Court treats factual allegations in a complaint as true when reviewing a dismissal under Rule 12(b)(6)." *Fussell v. N.C. Farm Bureau Mut. Ins. Co.*, 364 N.C.

---

constitutional claims are before us now and the parties have made no arguments relating to jurisdiction. Accordingly, we will address the trial court's Rule 12(b)(6) rulings only.

222, 225, 695 S.E.2d 437, 440 (2010) (citing *Stein v. Asheville City Bd. of Educ.*, 360 N.C. 321, 325, 626 S.E.2d 263, 266 (2006)).

To establish malicious prosecution, a plaintiff must show that the defendant (1) initiated or participated in the earlier proceeding, (2) did so maliciously, (3) without probable cause, and (4) the earlier proceeding ended in favor of the plaintiff. *N.C. Farm Bureau Mut. Ins. Co. v. Cully's Motorcross Park, Inc.*, 366 N.C. 505, 512, 742 S.E.2d 781, 786 (2013) (citations omitted). Defendants contend that the Court of Appeals correctly identified the elements of a malicious prosecution claim but erred in concluding that plaintiff's complaint sufficiently alleged that probable cause was lacking to pursue a first-degree murder case against him. Defendants do not challenge the sufficiency of the evidence as to the other elements of malicious prosecution. Accordingly, we begin by considering plaintiff's allegations that defendants did not have probable cause to initiate criminal proceedings against plaintiff.

"Where the claim is one for malicious prosecution, '[p]robable cause . . . has been properly defined as the existence of such facts and circumstances, known to [the defendant] at the *time*, as would induce a reasonable man *to commence* a prosecution.' " *Best v. Duke Univ.*, 337 N.C. 742, 750, 448 S.E.2d 506, 510 (1994) (alterations in original) (emphasis added) (quoting *Cook v. Lanier*, 267 N.C. 166, 170, 147 S.E.2d 910, 914 (1966)). We have consistently held that whether or not probable cause exists is determined at the time prosecution begins. *Williams v. Boylan–Pearce,*

*Inc.*, 69 N.C. App. 315, 318-19, 317 S.E.2d 17, 19 (1984), *aff'd per curiam*, 313 N.C. 321, 327 S.E.2d 870 (1985); *see also Cook*, 267 N.C. at 170, 147 S.E.2d at 914 ("In order to give a cause of action for malicious prosecution, such prosecution must have been maliciously instituted." (citing *Wingate v. Causey*, 196 N.C. 71, 144 S.E. 530 (1928)); *Taylor v. Hodge*, 229 N.C. 558, 560, 50 S.E. 307, 309 (1948) (establishing that malicious prosecution claims hinge on whether a defendant "laid the charge" regardless of facts that should have convinced him of plaintiff's innocence); *Morgan v. Stewart*, 144 N.C. 424, 430, 57 S.E. 149, 151 (1907) ("Probable cause, in cases of this kind, has been properly defined as the existence of such facts and circumstances, known to him at the time, as would induce a reasonable man to commence a prosecution." (citation omitted)). The subsequent acquittal of a defendant does not, as a matter of law, automatically negate the existence of probable cause at the time prosecution was commenced. *Bell v. Pearcy*, 33 N.C. (11 Ired.) 233, 234 (1850).

The grand jury indicted plaintiff for first-degree murder on 13 December 2007. Plaintiff argues correctly that a grand jury's action in returning an indictment is only prima facie evidence of probable cause and that, as a result, the return of an indictment does not as a matter of law bar a later claim for malicious prosecution. *See, e.g.*, *Taylor v. Hodge*, 229 N.C. 558, 50 S.E.2d 307 (1948) (holding that even though a magistrate initially found probable cause, the defendant in a malicious prosecution suit was not entitled to dismissal as a matter of law after the suit concluded in the plaintiff's favor). However, cases cited to us by both parties and

referenced in the opinion of the Court of Appeals involve conduct by defendants that occurred *before* the return of an indictment. *See Williams v. Kuppenheimer Mfg. Co.*, 105 N.C. App. 198, 201, 412 S.E.2d 897, 900 (1992) (concluding that criminal prosecution of the plaintiff would have been unlikely if the defendant had not provided virtually all the evidence to investigators prior to indictment); *see also Jones v. Gwynne*, 312 N.C. 393, 403, 323 S.E.2d 9, 15 (1984) (noting that the malicious prosecution claim was based on the issuance of arrest warrants that the prosecutor voluntarily dismissed, not on subsequent grand jury indictments that initiated new proceedings against the defendant); *Stanford v. Grocery Co.*, 143 N.C. 419, 425, 55 S.E. 815, 817 (1906) (explaining that the action triggering the malicious prosecution claim was "taking out the warrant and causing the plaintiff's arrest"). Here, in contrast, plaintiff's suit focuses on actions defendants took *after* the grand jury returned indictments against him. Accordingly, to determine whether probable cause existed, we must consider the evidence that was available to the investigators and presented to the grand jury in December 2007.

That evidence indicated that plaintiff inflicted two lethal slashes to his wife's neck, resulting in her death. This evidence was supported by defendants' original forensic report, which stated that the bloodstain on plaintiff's T-shirt was consistent with a bloody hand being wiped on the shirt. Based on this and other evidence, the grand jury returned an indictment for first-degree murder. This independent determination by the grand jury established prima facie the existence of probable

cause. *See Stanford*, 143 N.C. at 426, 55 S.E. at 817. Although plaintiff was subsequently acquitted on the basis of self-defense, that defense was presented at trial and does not necessarily negate the existence of probable cause at the time the case was brought to the grand jury. Plaintiff's complaint alleges that defendants failed to investigate the incident properly and generated incorrect and inaccurate information for presentation to the grand jury. However, the critical actions complained of took place after the indictment was returned. Based on the facts known to the investigators at the time of the grand jury proceedings, we are satisfied that a reasonable and prudent person would believe there was probable cause sufficient to prosecute plaintiff for first-degree murder.

The concurring opinions argue that this Court should recognize that a malicious prosecution case can arise after a magistrate or grand jury finds probable cause if that probable cause later evaporates but the prosecution nevertheless continues in bad faith (the "continuation theory"). We need not address that theory here for, assuming arguendo that this Court would adopt it under the proper circumstances, it is not before us now. Plaintiff's complaint is not that the original probable cause dissipated. Instead, the gravamen of plaintiff's argument is that probable cause never existed and that defendants' investigation following indictment was corrupt and shoddy. However, we have determined that the grand jury correctly found probable cause, and nothing in the subsequent investigation revealed facts that

disproved that probable cause. As a result, we are not faced with facts that invoke the continuation theory.

Therefore, the trial court properly concluded that plaintiff's malicious prosecution claim against defendants should be dismissed under Rule 12(b)(6) because plaintiff failed to state a claim upon which relief may be granted. We reverse the holding of the Court of Appeals to the contrary.

We next address plaintiff's claim of intentional infliction of emotional distress. Elements of this tort are "(1) extreme and outrageous conduct [by the defendant], (2) which is intended to cause and does cause (3) severe emotional distress to another." *Dickens v. Puryear*, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981). The tort also may be established when a "defendant's actions indicate a reckless indifference to the likelihood that they will cause severe emotional distress." *Id.* at 452, 276 S.E.2d at 335. Conduct constituting this cause of action may be found in "an abuse by the actor of a position . . . which gives him . . . power to affect" the interests of another. Restatement (Second) of Torts § 46 cmt. e (Am. Law Inst. 1965). We have held that extreme and outrageous conduct is that which "exceeds all bounds of decency tolerated by society." *West v. King's Dep't Store, Inc.*, 321 N.C. 698, 704, 365 S.E.2d 621, 625 (1988) (citing *Stanback v. Stanback*, 297 N.C. 181, 254 S.E.2d 611 (1979), *abrogated in part by Dickens*, 302 N.C. 437, 276 S.E.2d 325), and is "regarded as atrocious, and utterly intolerable in a civilized community," *Briggs v. Rosenthal*, 73 N.C. App. 672, 677, 327 S.E.2d 308, 311 (1985). Our state has set a "high threshold"

to satisfy this element. *Dobson v. Harris*, 134 N.C. App. 573, 578, 521 S.E.2d 710, 715 (1999), *rev'd on other grounds*, 352 N.C. 77, 530 S.E.2d 829 (2000). Foreseeability of injury, while not an element of the tort, is a factor to consider in assessing the outrageousness of a defendant's conduct. *West*, 321 N.C. at 705, 365 S.E.2d at 625 (citing *Dickens*, 302 N.C. 437, 276 S.E.2d 325).

We begin by considering the first element of the tort, whether defendants' conduct as alleged was extreme and outrageous. According to plaintiff, defendants concocted a motive for plaintiff to murder his wife and a theory to explain how that murder was carried out. Defendants then made a calculated decision to conduct and repeat experiments until they achieved a bloodstain pattern that supported their theory. When they achieved results they deemed satisfactory, defendant Thomas then rewrote the conclusion of his earlier blood spatter and bloodstain report without stating that he was presenting a new or amended version of the original report. To the contrary, defendant Thomas's report indicated the conclusion reached resulted from the original analysis of the evidence conducted on 14 September 2007.

Plaintiff's allegations do not portray agents vigorously pursuing an investigation with a determination to find the truth, a practice law-abiding citizens not only endorse but expect. Instead, plaintiff's allegations paint a picture of law enforcement officials deliberately abusing their authority as public officials to manipulate evidence and distort a case for the purpose of reaching a foreordained conclusion of guilt. We do not doubt that plaintiff's complaint alleged extreme and

outrageous conduct by these defendants sufficient to withstand a Rule 12(b)(6) motion to dismiss.

As to the second element of the tort, plaintiff alleged that defendants acted with intent to inflict emotional distress. While standing trial for first-degree murder is unquestionably stressful for anyone, plaintiff's complaint does not allege that defendants were merely negligent or that their investigation was inadequate. Instead, the complaint alleges sinister motives and conduct by defendants specifically aimed toward the improper purpose of wrongfully convicting plaintiff of murder. *See Needham v. Price*, ___ N.C. ___, 780 S.E.2d 549, 551 (2015) (holding that the "defendant's conduct did not rise to the level of willful and malicious conduct" in the context of parent-child immunity because the evidence did not show the defendant's "conduct was directed towards the [injured children]"). Specifically, the complaint, which we read in the light most favorable to plaintiff, alleges that defendants "wantonly and maliciously conducted unscientific tests to 'shore up' " their theory of the case, "wantonly failed to label [their] work properly," altered and manipulated evidence, and acted "to maintain the appearance of probable cause where none existed and to obtain a first-degree murder conviction of [plaintiff] despite evidence to the contrary." These allegations do not describe an investigation that was incompetent or incomplete, or one that skeptically explored the validity of plaintiff's self-defense claim. Instead, the complaint contends that defendants knew the results they wanted before they began and disregarded all evidence to the contrary. That

plaintiff would suffer mental anguish as a result of defendants' conduct is readily foreseeable. Moreover, plaintiff's allegations indicated that defendants were recklessly indifferent to the consequences of their actions. Accordingly, plaintiff's allegation of the intent element of his claim is sufficient to survive a Rule 12(b)(6) motion to dismiss.

Finally, we consider whether plaintiff has sufficiently alleged that he suffered severe emotional distress. The complaint states, among other things, that severe emotional distress manifested itself "in diagnosable form . . . including, *inter alia*: a. Depression; b. Anxiety; c. Loss of sleep; d. Loss of appetite; e. Lack of concentration; f. Difficulty remembering things; g. Feeling alienated from loved ones; h. Shame; and i. Loss of respect with the community and co-workers." Plaintiff further alleged that defendants' conduct caused him damages "in excess of $10,000.00." We find that these are sufficient allegations of severe emotional distress.

Taking all of plaintiff's allegations in the light most favorable to him, as we must at the pleading stage, we hold plaintiff has alleged elements of intentional infliction of emotional distress sufficient to withstand a motion to dismiss made pursuant to Rule 12(b)(6). As this case moves forward to summary judgment or trial, plaintiff will have to prove that his allegations are true, including that defendants' conduct amounted to more than substandard police work and was, instead, directed at plaintiff for an improper purpose. Accordingly, we affirm the decision of the Court of Appeals holding the trial court erred in dismissing this claim. This case is

remanded to the Court of Appeals for further remand to the trial court for additional proceedings consistent with this opinion.

REVERSED IN PART; AFFIRMED IN PART AND REMANDED.

Justice ERVIN concurring, in part, and concurring in the result, in part.

Although I concur in the Court's decision with respect to plaintiff's intentional infliction of emotional distress claim and in the Court's determination that plaintiff has failed to sufficiently state a malicious prosecution claim in his complaint, I am unable to agree with the logic that the Court has employed in upholding the dismissal of plaintiff's malicious prosecution claim. As a result, I concur in the Court's opinion, in part, and concur in the result reached by the Court, in part.

In determining that plaintiff's complaint fails to state a malicious prosecution claim, the Court begins by stating that "[w]hether or not probable cause exists is determined at the time prosecution begins."[3] After noting that "plaintiff's suit focuses on actions defendants took *after* the grand jury returned indictments against him"

---

[3] Although the majority relies on *Williams v. Boylan-Pearce, Inc.*, 69 N.C. App. 315, 318-19, 317 S.E.2d 17, 19 (1984), *aff'd per curiam on other grounds*, 313 N.C. 321, 327 S.E.2d 870 (1985), in support of this proposition, I do not view the opinion in that case as holding that the issue of probable cause in a malicious prosecution case must be resolved based solely upon an analysis of the facts in existence during a window of time between the commission of the underlying criminal act and the point at which the prosecution of the plaintiff began. Moreover, the only issue before this Court in that matter, which came to us by way of a partial dissenting opinion, related to the availability of punitive damages rather than the sufficiency of the plaintiff's showing of a want of probable cause. *Id.* at 322-23, 317 S.E.2d at 21-22 (Johnson, J., concurring in part and dissenting in part).

and stating that, "to determine whether probable cause existed, we must consider the evidence that was available to the investigators and presented to the grand jury in December 2007," the Court points out that the fact that the Davie County grand jury returned a bill of indictment charging plaintiff with first-degree murder in connection with the death of his wife "established prima facie the existence of probable cause." In addition, after acknowledging that plaintiff has alleged "that defendants failed to investigate the incident properly and generated incorrect and inaccurate information for presentation to the grand jury," the Court notes that "the critical actions complained of took place after the indictment was returned" and holds that, "[b]ased on the facts known to the investigators at the time of the grand jury proceedings," "a reasonable and prudent person would believe there was probable cause sufficient to prosecute plaintiff for first-degree murder."

The Court's focus upon the necessity for plaintiff to establish the absence of probable cause at the time that criminal charges were initially lodged against him takes an unduly narrow view of the scope of the malicious prosecution claim that plaintiff has attempted to assert in his complaint. Simply put, the Court reads plaintiff's malicious prosecution claim as being focused entirely upon the fact that he was indicted for murdering his wife. I do not, however, believe that plaintiff's claim is limited in the manner described by the Court.[4] A significant component of

---

[4] In fact, a careful study of the brief that plaintiff filed before this Court causes me to question the extent to which plaintiff attempted to state a malicious prosecution claim

plaintiff's allegations against defendants[5] consists of a description of their conduct in concocting and performing a supplemental blood smear "test" for the purpose of producing results that validated the State's decision to proceed against plaintiff. According to plaintiff's complaint, "[t]his evidence was crucial to maintain probable cause for a first-degree murder charge," with the underlying "test" having been conducted in order "to maintain the appearance of probable cause where none existed." In addition, plaintiff has alleged that both defendants should be found liable to plaintiff for malicious prosecution on the grounds that they "participated in and caused the institution of criminal proceedings against" plaintiff, with their misconduct having included, among other things, a failure "to properly investigate the circumstances of" the death of plaintiff's wife and plaintiff's "claim of self-defense"; the inclusion of "false and misleading information in investigative reports"; and a failure to "remain fair, neutral and truthful prior to and after the institution of criminal proceedings against" plaintiff. As a result, I am inclined to believe that

---

against either defendant arising from the Davie County grand jury's initial decision to charge him with murdering his wife. However, I do not believe that we need to make a definitive determination of the exact nature of the malicious prosecution claim that plaintiff has attempted to state in his complaint given his failure to allege a viable malicious prosecution claim against defendants on the basis of either of the two theories discussed in the text of this separate opinion.

[5] Special Agent Deaver did not become involved in the prosecution of plaintiff until sometime after the Davie County grand jury charged plaintiff with murdering his wife. For that reason, the fact that plaintiff sought to obtain a malicious prosecution recovery against Special Agent Deaver clearly indicates that plaintiff's claim rested upon more than an assertion that he was initially indicted for murdering his wife in the absence of probable cause.

plaintiff seeks to obtain a malicious prosecution recovery from defendants based upon claims that criminal charges were both initially instituted against him and continued against him without probable cause and cannot, for that reason, agree with the Court's decision to limit its analysis to a determination of the sufficiency of the allegations that defendants participated in the institution of criminal charges against plaintiff despite the absence of probable cause to believe that he was guilty of the offense with which he was charged and conclude, for that reason, that we must evaluate the validity of plaintiff's effort to plead a "continuation" claim in order to fully resolve the issues that have been properly presented for our consideration in this case.

"To make out a case of malicious prosecution [based upon a prior criminal prosecution,] the plaintiff must allege and prove that the defendant instituted, or procured, or participated in, a criminal prosecution against him maliciously, without probable cause, which ended in failure." *Cook v. Lanier*, 267 N.C. 166, 169, 147 S.E.2d 910, 913 (1966) (citing *Greer v. Skyway Broad. Co.*, 256 N.C. 382, 124 S.E.2d 98 (1962); *Carson v. Doggett*, 231 N.C. 629, 58 S.E.2d 609 (1950); and *Dickerson v. Atl. Ref. Co.*, 201 N.C. 90, 159 S.E. 446 (1931)). Consistently with this Court's reference to the possibility of malicious prosecution liability for "participation" in a wrong prosecution, a divided panel of the Court of Appeals upheld the sufficiency of the evidence to support a trial court judgment awarding the plaintiff $12,500 in damages in a malicious prosecution case in which the defendant continued to pursue a criminal

*ERVIN, J., concurring in part and concurring in the result in part*

citation charging the plaintiff with shoplifting several packs of cigarettes despite the fact that the plaintiff, on the day after the issuance of the shoplifting citation, presented the defendant with a receipt indicating that he had purchased the cigarettes that he had been charged with concealing. *Allison v. Food Lion, Inc.*, 84 N.C. App. 251, 252-55, 352 S.E.2d 256, 256-58 (1987). Although then-Judge Parker dissented from the court's decision on the grounds that, "[a]t the critical time, *i.e.*, the moment at which [the] plaintiff was apprehended in [the] defendant's store, the undisputed evidence" tended to support a determination that the plaintiff had shoplifted the cigarettes in question, *id.* at 256, 352 S.E.2d at 258 (Parker, J., dissenting), and that "[t]he pertinent inquiry is not whether [the] defendant's store manager should have believed [the] plaintiff, but rather whether under the circumstances existing at the time the criminal action was instituted, the store manager acted as a person of reasonable prudence in concluding that the crime charged had been committed," *id.* at 256, 352 S.E.2d at 259, this Court was apparently never asked to examine the correctness of the majority's decision. As a result, the Court of Appeals' determination that a malicious prosecution action could properly be maintained in the event that the plaintiff demonstrated, based upon events occurring after the institution of the underlying criminal case, that the defendant persisted in pursuing a prosecution that had become groundless, has been an established and unquestioned part of North Carolina malicious prosecution

jurisprudence since 1987.[6] *See* 2 N.C.P.I. – Civ. 801.00 (gen. civ. vol. June 2014) ("Malicious Prosecution–Criminal Proceeding"), at 1 & n.2 (allowing a finding of liability in the event that the jury determines, among other things, that the defendant "[caused a criminal proceeding to be continued] against the plaintiff without probable cause" (citing *Allison*, 84 N.C. App. at 254, 352 S.E.2d at 257) (majority opinion)));[7] *see also* Charles E. Day & Mark W. Morris, *North Carolina Law of Torts* § 9.40, at 105 (3d ed. 2012) (stating that, in light of *Allison*, "it can be suggested that a continuation of prosecution after probable cause is known not to exist may be a basis for a malicious prosecution action, notwithstanding that probable cause might have existed when the prosecution was initiated"); 1 William S. Haynes, *North Carolina Tort Law* § 14-3(A), at 513-14 (1989) (stating that "[t]he gist of an action for malicious prosecution is the wrongful initiation, encouragement or continuation, of a prior valid process or proceeding" (citation omitted), and that "[a] defendant may also be found liable for the tort of malicious prosecution, notwithstanding the fact that he initially

---

[6] Before the trial court, plaintiff's counsel argued that defendants lacked "a very good answer" for *Allison*, which he described as holding that "[m]alicious prosecution is either the initiation of a criminal proceeding without probable cause or the continuation of a proceeding when it is discovered that probable case no longer exists," and stated that plaintiff's complaint "clearly alleged" a claim stemming from defendants' involvement in the continuation of the criminal charges that had earlier been lodged against plaintiff in the absence of the necessary probable cause.

[7] Although the "Pattern Jury Instructions are not binding on this Court," *Stark v. Ford Motor Co.*, 365 N.C. 468, 478, 723 S.E.2d 753, 760 (2012) (citation omitted), they do express " 'the long-standing, published understanding' of . . . case law and statutes," *State v. Walston*, 367 N.C. 721, 731, 766 S.E.2d 312, 319 (2014) (quoting *Stark*, 365 N.C. at 478, 723 S.E.2d at 760).

had probable cause to instigate a criminal prosecution, if he afterwards secures knowledge that the charge is not well founded and thereafter fails to intervene for the purpose of having the criminal prosecution discontinued or to do all that is reasonably possible to do to sever his connection with the prosecution").

Aside from the well-established nature of the "continuation" theory for purposes of North Carolina law, the logic underlying that theory has been consistently recognized by leading encyclopedias and treatises addressing American tort law. *See* Restatement (Second) of Torts § 655 (Am. Law. Inst. 1977) (stating that "[a] private person who takes an active part in continuing or procuring the continuation of criminal proceedings initiated by himself or by another is subject to the same liability for malicious prosecution as if he had then initiated the proceedings"); *id.* § 655 cmt. b (pointing out that "[t]he rule stated in this Section applies when the defendant has himself initiated criminal proceedings against another or procured their institution, upon probable cause and for a proper purpose, and thereafter takes an active part in pressing the proceedings after he has discovered that there is no probable cause for them," and "applies also when the proceedings are initiated by a third person, and the defendant, knowing that there is no probable cause for them, thereafter takes an active part in procuring their continuation"); 52 Am. Jur. 2d *Malicious Prosecution* § 21, at 207-08 (2011) (stating that a malicious prosecution action can be maintained in the event that "the defendant instigated or encouraged, commenced or continued, initiated or procured,

or caused or assisted in causing the prosecution complained of, or advised, aided, cooperated, or assisted in the prosecution of the case" and that "[a] person who had no part in the commencement of the action, but who participated in it at a later time, may be held liable for malicious prosecution" (footnotes omitted)); *id.* § 26, at 211-12 (stating that "[a] person who plays an active role in continuing an unfounded criminal proceeding is liable for malicious prosecution, and even if there was probable cause for the commencement of an action, if the person afterwards acquires the means of asserting the charge was not well founded, his or her failure to intervene and have the prosecution discontinued or to sever his or her connection with it subjects that person to malicious prosecution liability" (footnotes omitted)); *id.* § 54, at 236 (stating that, although "the critical time" in some jurisdictions "for determining whether probable cause existed . . . is when the prosecution was initiated or began," in other jurisdictions, "liability for malicious prosecution may arise, even though the lawsuit was commenced with probable cause, if the suit is prosecuted after it later appears there is no probable cause" (citations omitted)); 54 C.J.S. *Malicious Prosecution* § 13, at 747 (2010) (stating that "[a] cause of action for malicious prosecution is not limited to the situation where the present defendant initiated the prior proceeding, and one who plays an active role in continuing an unfounded criminal proceeding when otherwise it would have been terminated may be liable for malicious prosecution" (footnotes omitted)); *id.* § 18, at 751 (stating that, even if "the defendant is granted immunity for complying with a statute governing disclosure of information to a

*ERVIN, J., concurring in part and concurring in the result in part*

prosecutorial officer, the defendant may nevertheless be liable for malicious prosecution where he or she fails to request termination of the proceeding after learning facts regarding [the] accused's innocence subsequent to swearing out a complaint leading to the accused's arrest" (citation omitted)); *id.* § 29, at 762 (stating that "[c]ontinuation of a prosecution in the face of facts that undermine probable cause can support a malicious prosecution claim" (citation omitted)); 3 Dan B. Dobbs, Paul T. Hayden & Ellen M. Bublick, *The Law of Torts* § 587, at 389 (2d ed. 2011) (stating that "[m]alicious prosecution can be established only if [ ] the defendant has instigated or continued to pursue a criminal proceeding"); *id.* § 588, at 396 (stating that, "[w]hen liability is based upon continuance rather than initiation of the prosecution, probable cause must be judged on appearances at the time the accuser acts to continue the prosecution, as where he refuses to withdraw his complaint even after he has learned of the accused's innocence" (citation omitted)); 1 Fowler V. Harper et al., *Harper, James and Gray on Torts* § 4.3, at 467-68 (3d ed. 2006) (stating that "continuing to prosecute [criminal] proceedings maliciously after learning of their groundless nature will result in liability, although they had been begun in good faith and with probable cause," since "it is as much a wrong against the victim, and as socially or morally unjustifiable to take an active part in a prosecution after knowledge that there is no factual foundation for it, as to instigate such proceedings in the first place" (citations omitted)); *id.* § 4.5, at 481 (stating that "only facts known at the time the defendant initiated the prosecution or wrongfully continued an action

are pertinent" in the probable cause determination (citations omitted)); W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 119, at 872 (5th ed. 1984) (stating that "[t]he defendant may be liable either for initiating or for continuing a criminal prosecution without probable cause" (footnote omitted)).[8] As a result, a wide variety of recognized secondary authorities in the field of tort law uphold the validity of the "continuation" theory adopted in *Allison*.

An analysis of the reported decisions concerning this issue clearly indicates that the vast majority of American jurisdictions that have considered the viability of the "continuation" theory have recognized its existence. As the Supreme Court of California stated in *Zamos v. Stroud*, 32 Cal. 4th 958, 87 P.3d 802 (2004), "the rule in every other state that ha[d] addressed the question [at the time the Supreme Court of California rendered its decision was], and in many states has long been, that the tort of malicious prosecution *does* include continuing to prosecute a lawsuit discovered to lack probable cause," *id.* at 966, 87 P.3d at 807, that "[t]he Restatement's position on this question has been adopted or was anticipated by the courts of a substantial number of states," *id.* at 967, 87 P.3d at 808 (citations omitted), and that the defendants had not presented, nor had the Court as of that point found,

---

[8] To be sure, the authors of the same treatise also state that "[p]robable cause is judged by appearances to the defendant at the time he initiates prosecution, not by facts discovered later," with such subsequently discovered facts being "relevant only to show the entirely different defense based on the accused's guilt in fact." *Id.* § 119, at 876 (footnote omitted). However, I do not believe that this statement undercuts the argument advanced in the text of this separate opinion given that, when read literally, it only applies to situations involving the initiation of the underlying criminal proceeding rather than to its continuation.

"a single state that has declined to adopt the Restatement's view in this regard," *id.* at 967, 87 P.3d at 808. The states noted in *Zamos* include Alabama, *Laney v. Glidden Co.*, 239 Ala. 396, 399, 194 So. 849, 851 (1940) (stating that "[a] suit for malicious prosecution may lie, not only for the commencement of the original proceeding, but for its continuance as well" (citations omitted)); Arizona, *Smith v. Lucia*, 173 Ariz. 290, 294, 295, 842 P.2d 1303, 1307, 1308 (Ct. App. 1992) (defining the tort of malicious prosecution without making any reference to the continuation rule, noting that "comment c to Restatement [Second of Torts] section 674 recognizes that an attorney who has properly commenced a civil action may be liable for continuing it without probable cause" and stating that "that rule is not applicable here" for the reasons stated in the court's opinion); Arkansas, *Harold McLaughlin Reliable Truck Brokers, Inc. v. Cox*, 324 Ark. 361, 368, 922 S.W.2d 327, 331 (1996) (stating that "the essential elements of malicious prosecution are: '(1) [a] proceeding instituted or continued by the defendant against the plaintiff[;] (2) [t]ermination of the proceeding in favor of the plaintiff[;] (3) [a]bsence of probable cause for the proceedings[;] (4) [m]alice on the part of the defendant[;] (5) [d]amages'" (alterations in original) (quoting *Farm Serv. Coop. v. Goshen Farms*, 267 Ark. 324, 331-32, 590 S.W.2d 861, 865 (1979))); Colorado, *Slee v. Simpson*, 91 Colo. 461, 465, 15 P.2d 1084, 1085 (1932) (stating that "one of the essential elements of a malicious prosecution is the commencement or continuance of an original criminal or civil judicial proceeding" (citations omitted)); Idaho, *Badell v. Beeks*, 115 Idaho 101, 102-04, 765 P.2d 126, 127-29 (1988) (defining the tort of

*ERVIN, J., concurring in part and concurring in the result in part*

malicious prosecution without making any reference to the continuation rule, noting that "the Restatement [Second of Torts] speaks in terms of initiating *or continuing* the proceeding" and "affirm[ing] the trial court's ruling that [the defendant] possessed probable cause, as a matter of law, to initiate and carry forward the malpractice action against" the plaintiff (citation omitted)); Iowa, *Wilson v. Hayes*, 464 N.W.2d 250, 259-61, 264 (Iowa 1990) (defining the tort of malicious prosecution without making any reference to the continuation rule, and stating that, "[t]o subject a person to liability for wrongful civil proceedings, the proceedings must have been initiated or continued primarily for a purpose other than that of securing the proper adjudication of the claim on which they are based" (quoting Restatement (Second) of Torts § 676); that "under the Restatement rule as expressed in comment d [to section 674], an attorney would only be liable if the attorney knowingly initiated or continued a suit for a clearly improper purpose"; and that "[e]ven though a lawsuit is commenced with probable cause, if the suit is prosecuted after it later appears there is in fact no probable cause, liability may arise" (citation omitted)); Kansas, *Nelson v. Miller*, 227 Kan. 271, 276, 607 P.2d 438, 443 (1980) (stating that "[t]o maintain an action for malicious prosecution of a civil action the plaintiff must prove," among other things, "[t]hat the defendant initiated, continued, or procured civil [proceedings] against the plaintiff," with it being "sufficient if it is shown that the defendant continued or procured the filing of the action" on the grounds that "[a] person may also be held liable for the wrongful continuance of the original

*ERVIN, J., concurring in part and concurring in the result in part*

proceeding" (citations omitted)); Mississippi, *Benjamin v. Hooper Elec. Supply Co.*, 568 So. 2d 1182, 1188, 1189 n.6 (Miss. 1990) (stating that the tort of malicious prosecution requires proof, among other things, of the "institution [or continuation] of a criminal proceeding" since, "[w]ithout doubt, it is as much a wrong against the victim and as socially or morally unjustifiable to take an active part in a prosecution after knowledge that there is no factual foundation for it, as to instigate such proceedings in the first place" (first alteration in original) (citations omitted)); New York, *Broughton v. State*, 37 N.Y.2d 451, 457, 335 N.E.2d 310, 314, 373 N.Y.S.2d 87, 94 (stating that "[t]he elements of the tort of malicious prosecution" include "the commencement or continuation of a criminal proceeding by the defendant against the plaintiff" (citation omitted)), *cert. denied*, 423 U.S. 929, 46 L. Ed. 2d 257 (1975); Ohio, *Siegel v. O.M. Scott & Sons Co.*, 73 Ohio App. 347, 351, 56 N.E.2d 345, 346-47 (1943) (stating that "[t]he general rule is that to maintain an action for malicious prosecution," the plaintiff must show, among other things, "[t]he institution or continuation of original judicial proceedings, either civil or criminal," with "the continuation of an original judicial proceeding . . . after acquiring means of ascertaining that the charge is not well founded" being sufficient to support a finding of liability (citations omitted)); Oregon, *Wroten v. Lenske*, 114 Or. App. 305, 308-09, 835 P.2d 931, 933-34 (defining the tort of malicious prosecution without making any reference to the continuation rule and holding that the trial court had erred by directing a verdict in favor of the defendant on the grounds that "there is evidence

that *continuation* of the action was without probable cause" given that, after "plaintiff's counsel wrote to defendant and informed him that plaintiff's letter had not been published, a question was raised whether a reasonable person would have investigated to verify the accuracy of that statement" (footnote omitted) and that "[t]here is an issue of fact regarding whether defendant should have investigated before continuing with the action" (citing *Lampos v. Bazar, Inc.*, 270 Or. 256, 268, 527 P.2d 376, 381-82 (1974) (en banc), and Restatement (Second) of Torts § 674 cmt. c (1977))), *rev. denied*, 314 Or. 574, 840 P.2d 1296 (1992); Pennsylvania, *Wenger v. Phillips*, 195 Pa. 214, 219, 45 A. 927, 927 (Pa. 1900) (stating that the fact "[t]hat the binding over was after the prosecution was barred by the statute of limitations did not make the defendant liable unless it appeared that he had persisted in the prosecution after he knew it was barred"); and Washington, *Banks v. Nordstrom, Inc.*, 57 Wash. App. 251, 255, 787 P.2d 953, 956 (stating that "to maintain an action for malicious prosecution, the plaintiff must establish," among other things, " 'that the prosecution claimed to have been malicious was instituted or continued by the defendant' " (quoting *Peasley v. Puget Sound Tug & Barge Co.* 13 Wash. 2d 485, 497, 125 P.2d 681, 687 (1942))), *rev. denied*, 115 Wash. 2d 1008, 797 P.2d 511 (1990). In addition to the decisions from the thirteen states referenced in *Zamos*, the continuation rule also appears to have been recognized in Alaska, *Greywolf v. Carroll*, 151 P.3d 1234, 1241 (Alaska 2007) (stating that "[t]he following elements are required to maintain a cause of action for the tort of malicious prosecution" and include, but

*ERVIN, J., concurring in part and concurring in the result in part*

are not limited to, " 'a criminal proceeding instituted or continued by the defendant against the plaintiff' " (citations omitted)); Florida, *Fischer v. Debrincat*, 169 So. 3d 1204, 1206 (Fla. Dist. Ct. App. 2015) (stating that "[t]o prevail in a malicious prosecution action, a plaintiff must establish," among other things, that " 'an original criminal or civil judicial proceeding against the present plaintiff was commenced or continued' " (quoting *Alamo Rent–A–Car, Inc. v. Mancusi*, 632 So. 2d 1352, 1355 (Fla. 1994)));[9] Georgia, *Horne v. J.H. Harvey Co.*, 274 Ga. App. 444, 446, 448, 617 S.E.2d 648, 650, 652 (2005) (defining the tort of malicious prosecution without making any reference to the continuation rule, stating that "even if a defendant has probable cause to initiate a criminal proceeding, if afterward, the defendant 'acquired knowledge, or the reasonable means of knowledge, that the charge was not well founded, his continuation of the prosecution is evidence of the want of probable cause, requiring that the question be submitted to the jury' " (quoting *Fuller v. Jennings*, 213 Ga. App. 773, 776-77, 445 S.E.2d 796, 799, *cert. denied*, Ga. LEXIS 1114 (Ga. Oct. 17, 1994)), and holding that while the defendant "could have formed a reasonable belief that probable cause existed to initiate the prosecution . . . an issue arises as to whether [the defendant] could reasonably believe that probable cause existed to pursue the prosecution"); Hawaii, *Arquette v. State*, 128 Haw. 423, 433, 290 P.3d 493, 503 (2012) (holding that "the tort of the continuation of a malicious prosecution is not

---

[9] The Supreme Court of Florida has "accepted jurisdiction" over *Debrincat*, but has not yet decided it. 182 So. 3d 631 (2015).

*ERVIN, J., concurring in part and concurring in the result in part*

an unwarranted enlargement of the current doctrine but, rather, logically stems from the policies underlying the tort"); Illinois, *Grundhoefer v. Sorin*, 2014 IL App (1st) 131276, ¶ 11, 20 N.E.3d 775, 780 (2014) (stating that "[t]he elements of a cause of action for malicious prosecution" include "the commencement or continuance by the defendant of an original judicial proceeding against the plaintiff" (citing *Miller v. Rosenberg*, 196 Ill. 2d 50, 58, 749 N.E.2d 946, 952 (2001))); Maine, *Trask v. Devlin*, 2002 ME 10, ¶ 11, 788 A.2d 179, 182 (2002) (stating that "[t]o prevail in a malicious prosecution action, a plaintiff must prove, by a preponderance of the evidence, that," among other things, "[t]he defendant initiated, procured or continued a criminal action without probable cause" (citations omitted)); Maryland, *Safeway Stores, Inc. v. Barrack*, 210 Md. 168, 173, 122 A.2d 457, 460 (1956) (stating that "[t]he necessary elements of a case for malicious prosecution of a criminal charge are well established" and include, among other things, that there was "a criminal proceeding instituted or continued by the defendant against the plaintiff" (citations omitted)), *abrogated on other grounds by Montgomery Ward v. Wilson*, 339 Md. 701, 732-36, 664 A.2d 916, 931-33 (1995); Michigan, *Fort Wayne Mortg. Co. v. Carletos*, 95 Mich. App. 752, 757, 291 N.W.2d 193, 195 (1980) (stating that "[t]he elements of malicious prosecution are," among other things, " 'a criminal proceeding instituted or continued by the defendant against the plaintiff' " (quoting *Wilson v. Yono*, 65 Mich. App. 441, 443, 237 N.W.2d 494, 496 (1975))); Montana, *Plouffe v. Mont. Dep't of Pub. Health & Human Servs.*, 2002 MT 64, ¶ 16, 309 Mont. 184, 190, 45 P.3d 10, 14 (2002) (stating that, "[i]n

*ERVIN, J., concurring in part and concurring in the result in part*

a civil action for malicious prosecution, the plaintiff's burden at trial is to introduce proof sufficient to allow reasonable jurors to find each of the six following elements," including that "a judicial proceeding was commenced and prosecuted against the plaintiff" and that "the defendant was responsible for instigating, prosecuting or continuing such proceeding" (citations omitted)); Nebraska, *McKinney v. Okoye*, 287 Neb. 261, 271-72, 842 N.W.2d 581, 591 (2014) (stating that "[i]n a malicious prosecution case, the conjunctive elements for the plaintiff to establish" include, among other things, "the commencement or prosecution of the proceeding against the plaintiff" (citation omitted)); Nevada, *LaMantia v. Redisi*, 118 Nev. 27, 30, 38 P.3d 877, 879-80 (2002) (stating that "[a] malicious prosecution claim requires that the defendant initiated, procured the institution of, or actively participated in the continuation of a criminal proceeding against the plaintiff" (citations omitted)); New Jersey, *LoBiondo v. Schwartz*, 199 N.J. 62, 89, 90, 970 A.2d 1007, 1022 (2009) (stating that "[m]alicious prosecution provides a remedy for harm caused by the institution or continuation of a criminal action that is baseless" before stating the elements of the tort without mentioning the continuation rule (citation omitted));[10] North Dakota,

---

[10] In its earlier decision in *Lind v. Schmid*, the New Jersey Supreme Court defined the tort of malicious prosecution without making any mention of the continuation rule. 67 N.J. 255, 262, 337 A.2d 365, 368 (1975). Aside from the fact that *Lind* preceded *LoBiondo*, nothing in *Lind* expressly rejects the validity of the continuation rule and some of the Court's language may tend to show its validity. *Lind*, 67 N.J. at 263, 337 A.2d at 368 (stating that "[t]he fallacy of this rationale is that it fails to recognize that the concept of probable cause in malicious prosecution is not fixed from one frame of reference"). As a result, it appears to me that New Jersey does, in fact, accept the validity of the continuation rule.

*ERVIN, J., concurring in part and concurring in the result in part*

*Richmond v. Haney*, 480 N.W.2d 751, 755 (N.D. 1992) (stating that "[i]n order to maintain an action for malicious prosecution one must establish," among other things, that " '[a] criminal proceeding [was] instituted or continued by the defendant against the plaintiff' " (quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 119, at 871 (5th ed. 1984))); Oklahoma, *Empire Oil & Ref. Co. v. Williams*, 1938 OK 654, ¶ 5, 184 Okla. 172, 173, 86 P.2d 291, 292 (1938) (stating that "[t]he essential elements in a cause of action for malicious prosecution" include, but are not limited to, "[t]he commencement or continuance of an original criminal or civil proceeding" (citing *Sawyer v. Shick*, 1911 OK 475, ¶ 4, 30 Okla. 353, 354, 120 P. 581, 582 (1911)));[11] South Carolina, *Eaves v. Broad River Elec. Coop.*, 277 S.C. 475, 477, 289 S.E.2d 414, 415 (1982) (stating that "[t]o maintain an action for malicious prosecution, a plaintiff must establish," among other things, "the institution or continuation of original judicial proceedings . . . by or at the instance of the defendant"

---

[11] In two decisions, the Oklahoma Supreme Court omitted any reference to the continuation rule in stating the elements of the tort of malicious prosecution. *Greenberg v. Wolfberg*, 1994 OK 147, ¶¶ 13-15, 890 P.2d 895, 901-92 (1994); *Imo Oil & Gas Co. v. Knox*, 1931 OK 440, ¶ 9, 154 Okla. 100, 102, 6 P.2d 1062, 1064 (1931). I do not believe that a failure to expressly incorporate the continuation rule into the definition of the tort of malicious prosecution in those cases can be understood as a refusal to recognize the existence of the continuation rule. *Greenberg*, 1994 OK 147, ¶ 14 n.22, 890 P.2d at 902 n.22, expressly relies upon *Sawyer v. Shick*, in which the continuation rule is expressly recognized, 1911 OK 475, ¶ 4, 30 Okla. 353, 354, 120 P. 581, 582 (1911). Similarly, the omission of any reference to the continuation rule in *Imo Oil*, 1931 OK 440, ¶ 9, 154 Okla. at 102, 6 P.2d at 1064, appears to be an anomaly given that one of the two cases cited in support of the definition of malicious prosecution utilized in that decision incorporates the continuation rule, *Sawyer*, 1911 OK 475, ¶ 4, 30 Okla. at 354, 120 P. at 582, and the other case does not define the elements of the tort of malicious prosecution at all, *Robberson v. Gibson*, 1917 OK 131, 62 Okla. 306, 162 P. 1120 (1917).

*ERVIN, J., concurring in part and concurring in the result in part*

(citation omitted)); Tennessee, *Pera v. Kroger Co.*, 674 S.W.2d 715, 722 (Tenn. 1984) (stating that "[i]t is well settled in the law of torts that even though one has probable cause to initiate criminal charges, there can be liability for the malicious continuation of a criminal proceeding");[12] Texas, *Tex. Beef Cattle Co. v. Green*, 921 S.W.2d 203, 207 (Tex. 1996) (stating that "[t]o prevail in a suit alleging malicious prosecution of a civil claim, the plaintiff must establish," among other things, "the institution or continuation of civil proceedings against the plaintiff" (citation omitted));[13] Utah, *Cline v. State*, 2005 UT App 498, ¶ 30, 142 P.3d 127, 137 (2005) (stating that the first element of a malicious prosecution claim "requires a plaintiff to establish that there is '[a] criminal proceeding instituted or continued by the defendant against the plaintiff' " (alteration in original) (quoting *Amica Mut. Ins. Co. v. Schettler*, 768 P.2d

---

[12] To be sure, there is no reference to the continuation rule in the definition of the tort of malicious prosecution set out in *Roberts v. Federal Express Corp.*, 842 S.W.2d 246, 247-48 (Tenn. 1992). However, the fact that *Roberts* does not question *Pera* and the fact that the Tennessee Court of Appeals has reiterated the validity of the continuation rule in reliance upon *Pera* within the past five years, *Bovat v. Nissan N. Am.*, No. M2013-00592-COA-R3-CV, 2013 WL 6021458, at *3 (Tenn. Ct. App. Nov. 8, 2013) (stating that, despite the absence of any reference to the continuation rule in the definition of malicious prosecution set out in *Roberts*, 842 S.W.2d at 248, and *Christian v. Lapidus*, 833 S.W.2d 71, 73 (Tenn. 1992), and "even though one has probable cause to initiate criminal charges, there can be liability for the malicious continuation of a criminal proceeding" (quoting *Pera*, 674 S.W.2d at 722)), I believe that Tennessee recognizes the viability of the continuation rule.

[13] In *Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 517 (Tex. 1997), the tort of malicious prosecution was defined without reference to the continuation rule. However, since *Richey* did not overrule *Texas Beef Cattle* and focused upon an issue other than the viability of the continuation rule, I do not believe that *Richey* can properly be understood as holding that Texas has rejected the validity of the continuation rule.

*ERVIN, J., concurring in part and concurring in the result in part*

950, 959 (Utah Ct. App. 1989)), *cert. denied*, 133 P.3d 437 (Utah 2006);[14] Wisconsin, *Elmer v. Chicago & Nw. Ry. Co.*, 257 Wis. 228, 231, 43 N.W.2d 244, 246 (1950) (stating that "[t]he six essential elements in an action for malicious prosecution" include, but are not limited to, "a prior institution or continuation of some regular judicial proceedings against the plaintiff" (citations omitted)); and Wyoming, *Toltec Watershed Improvement Dist. v. Johnston*, 717 P.2d 808, 811 (Wyo. 1986) (stating that "the following elements [are] necessary to sustain a cause of action for malicious prosecution," including " '[t]he institution or continuation of original judicial proceedings, either criminal or civil' " (quoting *Consumers Filling Station Co. v. Durante*, 79 Wyo. 237, 248, 333 P.2d 691, 694 (1958))). Admittedly, a number of states have defined the tort of malicious prosecution without making reference to the continuation doctrine. *See Bhatia v. Debek*, 287 Conn. 397, 404, 948 A.2d 1009, 1017 (2008);[15] *Crosson v. Berry*, 829 N.E.2d 184, 189 (Ind. Ct. App. 2005); *Williamson v. Gueuntzel*, 584 N.W.2d 20, 23 (Minn. Ct. App. 1998); *DeVaney v. Thriftway Mktg. Corp.*, 1998-NMSC-001, ¶ 17, 124 N.M. 512, 518, 953 P.2d 277, 283 (1997), *overruled*

---

[14] The Utah Supreme Court made no mention of the continuation rule in reciting the elements of the tort of malicious prosecution in *Neff v. Neff*, 2011 UT 6, ¶ 52, 247 P.3d 380, 394 (2011), but did not overrule either *Cline or Schettler*.

[15] The Connecticut Court of Appeals did hold in *Diamond 67, LLC v. Oatis*, 167 Conn. App. 659, 681, 144 A.3d 1055, 1069 (2016), that the related tort of vexatious litigation permitted a finding of liability predicated on a defendant's "initiation, continuation, and/or procurement" of a prior civil action, while suggesting that the continuation rule did not apply in malicious prosecution cases, *id.* at 683, 144 A.3d at 1070-71, which, in Connecticut, are limited to claims for relief based upon the initiation of baseless criminal charges, s*ee Bhatia*, 287 Conn. at 404-05, 948 A.2d at 1017.

*ERVIN, J., concurring in part and concurring in the result in part*

*in part by Durham v. Guest*, 2009-NMSC-007, ¶ 29, 145 N.M. 694, 701, 204 P.3d 19, 26 (2009);[16] *Henshaw v. Doherty*, 881 A.2d 909, 915 (R.I. 2005); *Czechorowski v. State*, 2005 VT 40, ¶ 30, 178 Vt. 524, 533, 872 A.2d 883, 895 (2005); *Hudson v. Lanier*, 255 Va. 330, 333, 497 S.E.2d 471, 473 (1998); *Norfolk S. Ry. Co. v. Higginbotham*, 228 W. Va. 522, 526-27, 721 S.E.2d 541, 545-46 (2011). However, I am not convinced that the failure of these decisions to mention the continuation rule in the course of defining the tort of malicious prosecution necessarily means that the courts in question would refuse to recognize the continuation rule in the event that the issue of its viability was squarely presented to them, as is evidenced by the fact that the continuation rule

---

[16] The New Mexico Supreme Court has consolidated what are, in most jurisdictions, the separate torts of malicious prosecution and abuse of process into the tort of malicious abuse of process. *Durham*, 2009-NMSC-007, ¶ 18, 145 N.M. at 698, 204 P.3d at 23. Although the New Mexico Supreme Court initially held in *DeVaney* that the elements of the tort of malicious abuse of process of process are "the initiation of judicial proceedings against the plaintiff by the defendant," "an act by the defendant in the use of process other than such as would be proper in the regular prosecution of the claim," "a primary motive by the defendant in misusing the process to accomplish an illegitimate end," and " damages," 1998-NMSC-001, ¶ 17, 124 N.M. at 518, 953 P.2d at 283, that court subsequently overruled its prior decision in *DeVaney* and modified the definition of the first element of the consolidated tort so as to delete the requirement that "the defendant . . . have initiated a judicial proceeding against the plaintiff," *Durham*, 2009-NMSC-007, ¶ 29, 145 N.M. at 701, 204 P.3d at 26, and to replace it with "the use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge," with this improper use of process consisting of either the "filing [of] a complaint without probable cause," or " 'an irregularity or impropriety suggesting extortion, delay, or harassment' or other conduct formerly actionable under the tort of abuse of process," *id.* at ¶ 29, 145 N.M. at 701, 204 P.3d at 26 (quoting *Fleetwood Retail Corp. of N.M. v. LeDoux*, 2007-NMSC-047, ¶ 12, 142 N.M. 150, 154, 164 P.3d 31, 35 (2007)). Although one could argue that this restatement of the elements of the tort of malicious abuse of process suffices to recognize something akin to the continuation rule for malicious abuse of process claims, the validity of that argument has not, to my knowledge, been tested.

was recognized in *Smith*, 173 Ariz. at 294-95, 842 P.2d at 1308; *Badell*, 115 Idaho at 102-04, 765 P.2d at 127-29; *Wilson*, 464 N.W.2d at 259-64; and *Wroten*, 114 Or. App. at 308-09, 835 P.2d at 933-34, despite the fact that the tort of malicious prosecution was defined in each of those cases without making any reference to the continuation rule and the fact that two other courts have refused to decide whether to accept or reject the continuation rule given the absence of any need to do so in order to resolve the case under consideration, *Maynard v. 84 Lumber Co.*, 657 N.E.2d 406, 408 (Ind. Ct. App. 1995); *Williamson,* 584 N.W.2d at 24-25.[17] As far as I have been able to determine, only Delaware appears to have explicitly rejected the "continuation" theory. *See Blue Hen Mech., Inc. v. Christian Bros. Risk Pooling Tr.*, 117 A.3d 549, 557 (Del. 2015) (rejecting a request for recognition of a claim for malicious prosecution "based on the wrongful continuation of proceedings after probable cause no longer exists" because the Court could see "no reason to extend the tort of malicious prosecution beyond the limited scope given to it by long-standing Delaware case law, and many reasons" for declining to do so (footnote omitted)). At an absolute minimum, these decisions make it clear to me that the overwhelming majority of American jurisdictions recognize the viability of the continuation rule in malicious prosecution cases.

---

[17] I do not wish to be understood as making any claim that the discussion of the decisions made by other jurisdictions with respect to the validity of the continuation rule set out in the text of this separate opinion is complete. I merely offer it in support of my general belief that the validity of the continuation rule is well recognized across the United States.

*ERVIN, J., concurring in part and concurring in the result in part*

In spite of the well-established nature of the "continuation" theory both nationally and in North Carolina, the Court refrains from commenting upon its viability on the grounds that, since "[p]laintiff's complaint is not that the original probable cause dissipated" and focuses, instead, upon a claim that "probable cause never existed," "[w]e need not address [the viability of] that theory in this jurisdiction. I am not, given my belief that plaintiff has, in fact, attempted to assert a valid "continuation" claim; the breadth of the authorities that recognize the validity of the "continuation" theory; the fact that neither party has openly questioned the validity of that theory in their briefs or during oral argument; and the fact that the logic underlying the "continuation" theory strikes me as fully consistent with this Court's malicious prosecution jurisprudence, comfortable with such a result, which seems to cast the validity of the "continuation" theory in North Carolina into unnecessary doubt. As a result, in light of my understanding of the allegations set forth in plaintiff's complaint, I believe that our analysis of the "lack of probable cause" allegations contained in plaintiff's complaint must necessarily focus upon both the allegations concerning the time at which plaintiff was originally charged with the murder of his estranged wife by the Davie County grand jury and the time at which the decision was made to continue proceeding against plaintiff on the charge of murdering his wife following the additional blood smear "tests" conducted by defendants.

According to well-established North Carolina law,

*ERVIN, J., concurring in part and concurring in the result in part*

> [a] pleading complies with [N.C. R. Civ. P. Rule 8(a)(1)] if it gives sufficient notice of the events or transactions which produced the claim to enable the adverse party to understand the nature of it and the basis for it, to file a responsive pleading, and—by using the rules provided for obtaining pretrial discovery—to get any additional information he may need to prepare for trial.

*Sutton v. Duke*, 277 N.C. 94, 104, 176 S.E.2d 161, 167 (1970). Although notice pleading pursuant to Rule 8(a)(1) of the North Carolina Rules of Civil Procedure does not require "detailed fact-pleading," *id.* at 104, 176 S.E.2d at 167, it does "manifest the legislative intent to require a more specific statement, or notice in more detail, than Federal Rule 8(a)(2) requires," *id.* at 100, 176 S.E.2d at 164, so that "no amount of liberalization should seduce the pleader into failing to state enough to give the substantive elements of his claim or of his defense," *id.* at 105, 176 S.E.2d at 167 (quoting William C. Myers & James E. Humphreys, Jr., *Pleadings and Motions*, 5 Wake Forest Intramural L. Rev. 70, 73 (1969)). As a result, our precedent suggests that at least some allegations supplying a factual basis for a malicious prosecution claim are necessary to preclude dismissal for failure to state a claim for which relief can be granted. *See Stanback v. Stanback*, 297 N.C. 181, 204, 254 S.E.2d 611, 626 (1979) (stating that "a complaint must nonetheless state enough to give the substantive elements of at least some legally recognized claim" to preclude dismissal for failure to state a claim for which relief can be granted), *disapproved on other grounds by Dickens v. Puryear*, 302 N.C. 437, 447-48, 276 S.E.2d 325, 331-32 (1981). In view of the fact that "the well-pleaded material allegations of the complaint are

taken as admitted" while the "conclusions of law or unwarranted deductions of fact[ ] are not admitted," *Lloyd v. Babb*, 296 N.C. 416, 427, 251 S.E.2d 843, 851 (1979) (quoting *Sutton*, 277 N.C. at 98, 176 S.E.2d at 163), "it is our task to determine whether" plaintiff's factual "allegations as a matter of law demonstrate the adequacy, or lack thereof, of" plaintiff's claim" *id.* at 427, 251 S.E.2d at 851. Thus,

> [d]ismissal under Rule 12(b)(6) is proper when one of the following three conditions is satisfied: (1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim.

*Wood v. Guilford County*, 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002) (citing *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985)). When considered in light of the applicable legal standard, I believe plaintiff's complaint fails to allege a valid claim for malicious prosecution against defendants arising from either the initiation of criminal charges against plaintiff or the decision to continue prosecuting him following the performance of the unscientific blood smear "tests."

"It is certainly the general rule, applicable to [malicious prosecution cases], that when a committing magistrate has bound the party over or a grand jury has found a true bill against him, such action *prima facie* makes out a case of probable cause, and the jury should be directed to consider the evidence as affected by this principle." *Stanford v. Grocery Co.*, 143 N.C. 419, 426, 55 S.E. 815, 817 (1906) (citations omitted). In view of plaintiff's acknowledgement that the Davie County

grand jury returned a bill of indictment charging him with murder, he has, in effect, pleaded a fact that serves to defeat his malicious prosecution claim in the absence of an allegation providing some basis for overcoming the prima facie case of probable cause that he has set out in his complaint. Although plaintiff asserts that he acted in self-defense at the time that he killed his wife and that defendants "fail[ed] to properly investigate the circumstances of [Mrs.] Turner's death" and plaintiff's "claim of self-defense," these conclusory allegations provide no support for the legal conclusion stated in his complaint to the effect that "there was a lack of probable cause to sustain an indictment on first-degree murder and but for the malicious, intentional acts of [defendants, plaintiff] would not have been indicted and tried for first-degree murder." *See Carson*, 231 N.C. at 633, 58 S.E.2d at 612 (stating that, "when the facts are admitted or established, the question of probable cause is one of law for the court" (citing *Rawls v. Bennett*, 221 N.C. 127, 130, 19 S.E.2d 126, 128 (1942); *Morgan v. Stewart*, 144 N.C. 424, 425, 57 S.E. 149, 149 (1907)). For example, plaintiff failed to allege that defendants unreasonably declined to believe his protestations of innocence, that he did nothing to provoke the attack that he claimed that his wife had made upon him, or that defendants had no basis whatsoever for failing to accept plaintiff's assertion that he acted in perfect self-defense. As a result, given that plaintiff has failed to allege any factual support for his assertion that, despite the grand jury's decision to charge him with murdering his wife, there was no probable cause to believe that he was guilty of murder, plaintiff's complaint fails to

give defendants sufficient notice of the events or transactions which produced the claim so as to enable defendants to understand the nature of plaintiff's claim and the basis for it, and consequently, plaintiff's complaint must be deemed fatally defective.

Similarly, I do not believe that plaintiff has stated a malicious prosecution claim against defendants arising from the unlawful continuation of the underlying murder prosecution without probable cause stemming from the actions taken in the aftermath of the 15 January 2008 meeting. In essence, plaintiff alleges that, following this meeting, defendants "wantonly and maliciously conducted unscientific tests to 'shore up' the new theory that [plaintiff's] wounds were self-inflicted and therefore, not a result of self-defense." Although the allegations set forth in plaintiff's complaint clearly describe a highly unethical attempt to manufacture evidence in support of the State's attempt to convict plaintiff of first-degree murder, the complaint provides no indication whatsoever that the machinations in which defendants allegedly engaged had any effect beyond bolstering the State's existing case against plaintiff. Put another way, the existence of additional, albeit manufactured, evidence, while certainly enhancing the likelihood that plaintiff would be wrongly convicted of murdering his wife, could not have done anything to detract from the existing evidence that had resulted in the Davie County grand jury's decision to charge plaintiff with murder.[18] Thus, I do not believe that plaintiff has stated a

---

[18] Although plaintiff has argued that he had alleged that defendants had "a collateral purpose in initiating or continuing the proceedings" against him and that this fact provides

claim for relief sounding in malicious prosecution arising from the additional "unscientific" blood smear testing that defendants performed in early 2008.

In summary, while I am unable to agree with the manner in which the Court has analyzed the sufficiency of plaintiff's complaint to allege a malicious prosecution claim against defendants, I do agree that plaintiff failed to state a malicious prosecution claim against them in his complaint. Despite the presence of an allegation that makes out a prima facie showing that probable cause was not lacking, plaintiff has completely failed to provide any factual support for his conclusory allegation that plaintiff's prosecution was initiated and continued in the absence of the requisite probable cause. As a result, I concur in the Court's opinion with respect to the sufficiency of plaintiff's complaint to state a claim for intentional infliction of emotional distress and concur in the result that the Court has reached with respect to the sufficiency of plaintiff's complaint to state a malicious prosecution claim against defendants.

---

"prima facie evidence of a lack of probable cause," citing *Taylor v. Hodge*, 229 N.C. 558, 50 S.E.2d 307 (1948) and *Wilson v. Pearce*, 105 N.C. App. 107, 412 S.E.2d 148, *disc. rev. denied*, 331 N.C. 291, 417 S.E.2d 72 (1992), that logic does not suffice to resuscitate plaintiff's malicious prosecution claim in this case given that defendants' desire "to secure a conviction [in] a high publicity murder case regardless of guilt to further [defendants'] careers" and "to assist the District Attorney in winning a very public case for political purposes" does not seem to me to rise to the level of personal malice and effort to obtain personal gain present in the cases upon which plaintiff relies.

Justice HUDSON concurring in part, and dissenting in part.

I agree with the majority's disposition of the claims for intentional infliction of emotional distress, which affirms the Court of Appeals' reversal of the dismissal of these claims as to defendants Thomas and Deaver. I disagree with the majority's analytical framework for malicious prosecution claims; therefore, I agree with Justice Ervin's analysis in his concurring opinion, which recognizes that North Carolina has long allowed malicious prosecution claims under a "continuation theory." Even under the majority's theory of malicious prosecution, in my view, plaintiff has sufficiently stated claims for malicious prosecution to survive dismissal under Civil Procedure Rule 12(b)(6) and proceed with his claim against Thomas. I also conclude that under the law previous to this opinion, as well as under the framework explained by Justice Ervin, the complaint sufficiently states a claim for malicious prosecution against Deaver as well. Therefore, as to the malicious prosecution claims against Thomas and Deaver, I respectfully dissent.

As the majority states, a claim for malicious prosecution requires a showing that "the defendant (1) initiated or *participated in* the earlier proceeding, (2) did so maliciously, (3) without probable cause, and (4) the earlier proceeding ended in favor of the plaintiff." (Emphasis added.) Furthermore, I agree with the majority's discussion of the applicable principles regarding a motion to dismiss under Rule 12(b)(6). The relevant inquiry is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be

granted." *Newberne v. Dep't of Crime Control & Pub. Safety*, 359 N.C. 782, 784, 618 S.E.2d 201, 203 (2005) (quoting *Meyer v. Walls*, 347 N.C. 97, 111, 489 S.E.2d 880, 888 (1997)).

As noted in the concurring opinion, North Carolina adopted notice pleading many years ago. Civil Procedure Rule 8(a)(1) does not require "detailed fact-pleading," but rather requires only that a pleading give "sufficient notice of the events or transactions which produced the claim to enable the adverse party to understand the nature of it and the basis for it." *Sutton v. Duke*, 277 N.C. 94, 104, 176 S.E.2d 161, 167 (1970); *see Pyco Supply Co. v. Am. Centennial Ins. Co.*, 321 N.C. 435, 442, 364 S.E.2d 380, 384 (1988) ("Through [Rule 8(a)(1) of the North Carolina Rules of Civil Procedure], the General Assembly of North Carolina adopted the concept of notice pleading.") Although there is some precedent for requiring that allegations supply a factual basis for extreme conduct in a claim of intentional infliction of emotional distress, *see Chidnese v. Chidnese*, 210 N.C. App. 299, 317, 708 S.E.2d 725, 738 (2011) ("Plaintiff's complaint and brief simply state that defendants' previously discussed behavior was extreme and outrageous, without providing any support or case for this assertion. However, 'this Court has set a high threshold for a finding that conduct meets the standard' of extreme and outrageous conduct." (quoting *Dobson v. Harris*, 134 N.C. App. 573, 578, 521 S.E.2d 710, 715 (1999), *rev'd on other grounds*, 352 N.C. 77, 530 S.E.2d 829 (2000)), a claim of malicious prosecution must satisfy only the basic requirements of notice pleading. To the extent that the majority

goes beyond treating the allegations as true and analyzing evidence of probable cause, I conclude it has gone too far.

The majority also states that "plaintiff's suit focuses on actions defendants took *after*" the grand jury indicted him. I do not accept this characterization because a number of specific allegations against Thomas address what he knew and did before plaintiff was indicted. As to Deaver, specific allegations address his "participation" in the continuing prosecution after plaintiff's indictment.[19]

Turning to the complaint, the allegations that in my view adequately state a claim for malicious prosecution include the following:

> 14. Acting in self-defense, Dr. Kirk Turner grabbed a pocketknife from his right front pocket and made two cuts in rapid succession to Jennifer Turner's neck area which resulted in her death.
>
>  . . . .
>
> 26. Prior to examining any evidence for bloodstains or bloodstain patterns, SA Thomas was informed by Special Agent D. J. Smith that Jennifer Turner had apparently stabbed Dr. Kirk Turner with the spear and in response Dr. Kirk Turner reached into his right front pocket of his pants and retrieved a knife which Dr. Kirk Turner used to cut Jennifer Turner causing her death.
>
>  . . . .

---

[19] Although the majority correctly states that a claim for malicious prosecution may be based on participation in a proceeding, it then (improperly, as noted in the concurring opinion) limits that participation to pre-indictment activities. Defendant Deaver's alleged involvement in these events, which began after the indictment, nonetheless can constitute malicious prosecution by participation, both under existing law and as discussed in the concurring opinion.

43. Upon information and belief, SA Thomas and SA Deaver conducted these additional tests in an effort to prove the new theory that Dr. Kirk Turner had planned the murder of Jennifer Turner, to maintain the appearance of probable cause where none existed and to obtain a first-degree murder conviction of Dr. Kirk Turner despite evidence to the contrary.

. . . .

67. SA Thomas and SA Deaver, acting in their individual capacities, participated in and caused the institution of criminal proceedings against Dr. Kirk Turner for the murder of his wife Jennifer Turner by, *inter alia*:

    a. Failing to properly investigate the circumstances of Jennifer Turner's death;

    b. Failing to properly investigate Dr. Kirk Turner's claim of self-defense;

    c. Hiding and/or attempting to hide pertinent information about evidence collected at the scene;

    d. Failing to adhere to the administrative practices of SBI report writing;

    e. Including false and misleading information in investigative reports; and

    f. Otherwise failing to remain fair, neutral and truthful prior to and after the institution of criminal proceedings against Dr. Kirk Turner.

68. In an effort to secure a first-degree murder indictment and conviction, SA Thomas and SA Deaver intentionally, maliciously, and without just cause, failed to take the appropriate measures described above.

69. At all times relevant to the investigation and prosecution of Dr. Kirk Turner, there was a lack of probable cause to sustain an indictment on first-degree murder and but for the malicious, intentional acts of SA Thomas and SA Deaver, Dr. Kirk Turner would not have been indicted and tried for first-degree murder.

In my view, these allegations are sufficient to state claims for malicious prosecution against Thomas and Deaver under existing North Carolina law. The allegations set forth in the last two paragraphs, when taken together with the complaint as a whole and particularly those in paragraph 67(a)-(e), allege a lack of probable cause and knowledge of the same on the part of defendants, and also provide "sufficient notice of the events or transactions which produced the claim." *Sutton*, 277 N.C. at 104, 176 S.E.2d at 167.

The majority asserts that it "must *consider the evidence* that was available to the investigators and presented to the grand jury in December 2007" and concludes, *"[b]ased on the facts known to the investigators* at the time of the grand jury proceedings, we are satisfied that a reasonable and prudent person would believe there was probable cause." (Emphases added.) The majority further states that the grand jury properly found probable cause and that "nothing in the subsequent investigation revealed facts that disproved that." Again, the focus of our review should be on the allegations in the complaint, taken as true. In considering whether the complaint has adequately stated claims for malicious prosecution, I do not think

we need to consider the evidence or subsequent investigation at all. Instead, we must look at the allegations of the complaint and, taking them as true, determine if they have stated the elements of the claims. I express no opinion concerning the sufficiency of the evidence or the potential merits of plaintiff's claims at trial. Rather, looking solely at the allegations in the complaint, and taking them as true, I conclude that plaintiff has sufficiently stated claims for malicious prosecution against Thomas and Deaver. Accordingly, I would affirm the Court of Appeals' holding reversing dismissal under Rule 12(b)(6) of these claims, as well as the claims for intentional infliction of emotional distress. I would allow plaintiff's claims for malicious prosecution to proceed as to Thomas and Deaver.

As such, I respectfully dissent as to these two claims but concur in the majority's decision regarding plaintiff's claims for intentional infliction of emotional distress.

Justice BEASLEY joins in this opinion.